FRANCIS C. NEALE, Inc., v. NEW YORK STEAM CO. et al.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. NEGLIGENCE (§ 62*)—ACTS CONSTITUTING—PROXIMATE CAUSE.

     Where liquors stored by the owner in a cellar on his premises adjoining a street were damaged by the overheating of the cellar caused by the escape of steam from pipes in the street, caused by the construction of a sewer and an excavation in the street, the damages were the direct and natural result of the work done in the street, and there was no intervening cause to break the causal connection.

     [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76–79; Dec. Dig. § 62.*]

2. CONTRACTS (§ 186*)—AGREEMENT FOR BENEFIT OF THIRD PERSONS.

     A certificate of the board of rapid transit railroad commissioners gave to a railroad company authority to construct and operate a tunnel railroad, but required the company to care for all underground structures and to pay damages sustained to owners of property abutting on the railroad, injured by construction or operation. The railroad company contracted for the construction of the railroad and a terminal building, and the contractor contracted with third persons for a sewer in a street and for the sinking of caissons, as a part of the work for the railroad. The work caused the breaking of steam pipes, and steam escaped, overheating a cellar on adjoining premises and damaging liquor stored therein. *Held*, that the railroad company and all the contractors were liable for the injuries sustained to the owner of the liquor, who, though not a party to the agreement evidenced by the certificate, could sue for a breach thereof.

     [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 790–797; Dec. Dig. § 186.*]

3. APPEAL AND ERROR (§ 193*)—REVIEW—QUESTIONS NOT RAISED BELOW.

     Where the allegations of a complaint, that it was the duty of a railroad company and its contractor and subcontractors so to construct a railroad as not to injure abutting property, obviously referred to the duty imposed by the certificate of the board of rapid transit railroad commissioners to the railroad company, it was too late to raise the point on appeal that the contract evidenced by the certificate for breach of which the action was brought was not sufficiently pleaded.

     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1240; Dec. Dig. § 193.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Francis C. Neale, Incorporated, against the New York Steam Company and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

See, also, 143 App. Div. 906, 127 N. Y. Supp. 1133.

The plaintiff, as lessee for a term of years, was in possession of premises on the northeast corner of Dey and Church streets in the borough of Manhattan. It brought this action to recover damages for injuries to wines and liquors, stored by it in the cellar and basement of said premises during the years 1906 and 1907, caused by the overheating of the basement and cellar by steam, which either escaped from the steam pipes of the defendant, New York Steam Company, or was generated from water escaping from the Croton water mains and coming in contact with the heated steam pipes. It is claimed that the leaks in the steam and water pipes were caused by the work done in the vicinity in connection with the construction of the Hudson Terminal Building and the railroad of the appellant the Hudson & Manhattan Railroad Company. On the 28th of November, 1903, the latter company received a franchise in the form of the certificate of the Board of Rapid Transit Railroad Commissioners of the City of New York to construct and operate a tunnel railroad from the middle of the Hudson river easterly under Cortlandt street to Church street; thence northerly just west of Church street under private property, crossing under Dey street; thence again under private property to Fulton street at or near the westerly line of Church street; thence again westwardly to the middle of the river. The appellant Hudson Companies owned the premises west of Church street between Cortlandt and Dey streets and between Dey and Fulton streets. At some time prior to 1906, it entered into a contract with the Hudson & Manhattan Railroad Company for the construction of its railroad, and of the Hudson Terminal Building in connection with it, which latter was to be built upon and under private property and in part under Dey street, and upon completion was to be conveyed by the said Hudson Companies to the Railroad Company.

On the 24th of April, 1906, the Hudson Companies entered into a contract with the James Pilkington Construction Company for the construction of a sewer on the east side of Church street, running north from Dey street. The work under that contract began in May, 1906, and was completed in the fall of 1906. On the 10th of May, 1906, the Hudson Companies entered into a contract with the O'Rourke Engineering Construction Company for the sinking of 14 caissons on the west side of Church street from Cortlandt to Fulton streets, just outside of the building line. The work under that contract was begun on the 31st of July, 1906, and was completed in February or March, 1907. In November, 1906, the Hudson Companies, claiming that there had been unnecessary delay in the prosecution of the work, took charge of and completed it. Before the work of sinking the caissons was begun, but precisely when does not appear, the Hudson Companies excavated Dey street immediately west of its intersection with Church street, constructing a bridge over the street for traffic. There was some evidence tending to show that Church street at that point was not properly supported by sheet piling, and that the soil of the street slipped down into the excavation of Dey street. It does not appear, except by inference, for what purpose the sewer was constructed. It does appear that there had been an old sewer in the middle of Church street, and the court charged the jury without exception that the sewer was constructed as a part of the building operations of the Hudson Companies, acting as the construction company for the Hudson & Manhattan Railroad Company.

In May, 1906, the plaintiff first discovered that its cellar and basement were overheated, and, upon complaint being made to the New York Steam Company the latter opened the street at the intersection of Church and Dey streets and found a leak in a joint of the steam pipes and repaired it. The plaintiff's cellar and basement do not appear to have become overheated again until September, 1906. The steam pipe was 7 feet below the surface of the street and within a few inches of the westerly wall of the plaintiff's basement and cellar. The

water pipe in Church street was about 4½ feet below the surface of the street and 3 feet west of the steam pipe. The bottom of the sewer, constructed as aforesaid, was 15 feet, and its top 8 or 10 feet, below the surface of the street. It was constructed by excavating alongside of the steam and water pipes and then by tunneling underneath. The joints of the steam pipe were supported by saddles, resting upon a brick or cement base, which in turn was supported by the soil. During the construction of the sewer underneath the steam pipe, the latter was supported by planking. There is no evidence to show what caused the break in the joint of the steam pipes in May, 1906, except it be inferred from the fact that the work of constructing the sewer was being prosecuted at the time. After the work of sinking the caissons began, the soil in Church street commenced to subside, and there is evidence tending to show that, during the prosecution of that work, an extreme subsidence of soil of 8 inches on the west side of the street and of 4 inches on the east side was reached, and, when openings were made in the street to discover the condition of the steam pipes, it was found that the soil had settled away from the supports of the joints.

The complaint in form purports to state two causes of action, one for negligence, and one for breach by the appellants of their duty to support the steam and water pipes and to so prosecute their work as not to cause injury. At the close of the evidence, the trial court required the plaintiff against its protest to elect on which theory to go to the jury, and it elected to have the case submitted to the jury on the theory of negligence. The court, however, charged the jury at the request of the defendants that there was no evidence of any negligence in the construction of the sewer. The jury were directed to render a general verdict and, at the request of the plaintiff, to answer specific questions, among others the following: (1) Were the injuries complained of by the plaintiff caused by the subsidence of the soil in front of its premises and the escaping of steam from the defendant the New York Steam Company's main? (2) If so, was the subsidence of the soil solely due to the building operations of the defendants the Hudson & Manhattan Railroad Company and the Hudson Companies? The jury rendered a general verdict against the said defendants and answered each of said questions, "Yes."

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Graham Sumner, for appellants.
Julius Henry Cohen, for respondent.

MILLER, J. It would unduly extend this opinion to state more than our conclusions with respect to some of the questions urged by the learned counsel for the appellants. We think the evidence of damage sufficient to sustain the verdict, though much of it was admissible only by consent of counsel.

[1] It satisfactorily appears that the damage was caused by the overheating of the plaintiff's cellar and basement, which in turn was caused by the escaping steam from the breaks in the pipes, which in turn were caused by the subsidence of the soil of Church street, due to the construction of the sewer, the excavation of Dey street, and the sinking of the caissons. The plaintiff was not obliged to vacate its premises, and it was not shown that it omitted any precaution to reduce or minimize the damage which might reasonably have been expected of it.

Before considering the appellants' responsibility for the result of the work being prosecuted by or for them, I shall examine their contention that that was not the proximate cause of the damages. It would seem that there was an unbroken chain of cause and effect, connecting

the work and the damage; but it must be conceded that the case is perilously near the line of fire cases in this state, beginning with Ryan v. N. Y. C. & H. R. R. R. Co. 35 N. Y. 210, 91 Am. Dec. 49, and ending with Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715. Those cases turned on the peculiar facts involved in each, and it seems to me that this case is more nearly analogous to the cases, wherein the Ryan Case was distinguished, referred to in the opinions in the Hoffman Case. In this case, there was no intervening cause to break the causal connection between the first cause and the final result, the injury to the plaintiff, and it seems to me that the injury was the direct and natural result of the work done in connection with the defendants' building operations, which any one, knowing the conditions, would have foreseen. If the plaintiff's cellar had been flooded by water from the broken water main, we should have no hesitation in saying that it was the direct, natural, and proximate result of the acts for which the appellants are sought to be charged, and it seems to me that the case is no different from the fact that, instead of actually entering the cellar, the escaping steam, coming in contact with the walls, overheated it.

[2] The important question in the case is whether the appellants are legally responsible for the damage caused. The certificate, granted by the Board of Rapid Transit Railroad Commissioners, expressly provided that its authorization, and the rights and privileges granted, were subject to certain limitations, terms, conditions, and requirements, among others, the following:

"Provided, however, and it is expressly stipulated that the Tunnel Company shall in the course of construction at its own expense maintain and care for all underground structures; and any necessary interference with underground structures shall be subject to reasonable regulation by the department of the government of the city in control or charge thereof.

"The Tunnel Company shall at all times, by suitable bridging or other supports, maintain and support in an entirely safe condition for their usual service and to the reasonable satisfaction of the owners, all elevated railroad structures, street tramways of whatever character, water and gas mains, steam pipes, pneumatic tubes, electric subways, sewers, drains, and all other surface or sub-surface structures encountered during the progress of the work. * * *

"The Tunnel Company shall make good to the city all damage which shall be done to the property of the city by the construction or operation of the railroad and shall make good to every owner of property abutting upon the railroad, or which shall be injured by the work of construction or by the operation thereof, all damage which shall be done to such abutting or injured property through any fault or negligence of the Tunnel Company or successor thereof or of any contractor, subcontractor or other person in the course of any employment upon the contruction or operation of the railroad or any part thereof."

The case is complicated by the difficulty of referring a particular injury to a particular piece of work, and by the fact that the court ruled as matter of law that there was no evidence of negligence in the construction of the sewer, and that the jury have found that the other work was negligently done. I think that all of the building operations were so inseparably connected that they may be considered as one piece of work. The Terminal Building was to be used in part at least as a terminal

station. It was constructed partly under a public street. The said certificate refers to the terminal station as a part of the structure of the railroad. The railroad itself was constructed along the west side of Church street, partly under private property and partly under Dey street. The sewer was doubtless constructed on the east side of Church street because of the work to be undertaken for the construction both of the railroad and of the Terminal Building. The caissons were sunk and a cofferdam was constructed to prevent sand and water from coming in on the interior excavation when that should be made. The work within the building line involved both the construction of the railroad and the Terminal Building, and Dey street was excavated both. for the railroad and for the Terminal Building. The work complained of was all done in the public street, and I think it must be regarded under the evidence in this case as having been done pursuant to the authority of the certificate, granted by the Board of Rapid Transit Railroad Commissioners. Certainly, no other authority was shown. Both appellants, then, are in the position of having done, or authorized the doing of, work in a public street under the authority of the said certificate, which, either as a result of negligence in the doing of it or as a necessary consequence, broke the steam pipes of a public service corporation, having prior rights in the street, thereby causing injury to the plaintiff. I think that neither can escape liability on the claim that the work was done by an independent contractor, and that the impossible burden was not imposed upon the plaintiff of separating the damage done in the construction of the railroad from that done in the construction of the building, that done by the appellant, the Hudson Companies, from that done by the O'Rourke Construction Company and the Pilkington Construction Company, respectively, that resulting from negligence from that occurring as a necessary consequence of the doing of the work. The work was authorized and undertaken on the express condition that all underground structures be safely maintained and cared for and that any injury done "through any fault or negligence of the Tunnel Company or successor thereof or of any contractor, subcontractor, or other person in the course of any employment upon the construction or operation of the railroad or any part thereof" be made good. The appellants assumed the absolute duty safely to maintain the subsurface structures, and they or their subcontractors were at "fault" in failing to discharge it. It is now settled that a person injured by a breach of that duty, though not a party to the contract, has a right of action. Continental Asphalt Paving Co. v. Hudson & Manhattan R. R. Co., 143 App. Div. 338, 128 N. Y. Supp. 226; Smyth v. City of New York, 203 N. Y. 106, 96 N. E. 409. Although the work of constructing the railroad was for a public purpose, the right to undertake it was conditioned upon the assumption of the said absolute duty, and it is therefore immaterial whether the failure to discharge it was due to negligence.

[3] The complaint made no reference to the franchise pursuant to which the work was done; the plaintiff merely alleging its conclusion that it was the duty of the appellants so to perform the work as not

to injure the plaintiff or cause the steam pipe or water main to leak and to compensate the plaintiff for any damage sustained. Obviously, that averment referred to the duty imposed by the certificate granted the Railroad Company, which was received in evidence without objection. We think it is now too late for the appellants to raise the point that the contract, for breach of which the action was brought, was not sufficiently pleaded, and that the specific findings of the jury entitle the plaintiff to an affirmance of the judgment.

The judgment and order should be affirmed, with costs. All concur.