BETTIE HOGGARD, Plaintiff, *v.* OTIS ELEVATOR Co., Defendant.

Supreme Court, Trial Term, New York County, December 30, 1966.

*Charles M. Phillips* and *Harold Sylvan* for plaintiff. *Hampton & Dietel (Walter Hampton* of counsel), for defendant.

HARRY B. FRANK, J. Plaintiff, Bettie Hoggard suffered injuries on October 8, 1963 while being helped from an elevator car which had stalled and come to a stop between floors in Lebanon Hospital where she was employed. Defendant Otis Elevator Co. was responsible for maintenance of said elevator on that date by virtue of a contract which it had entered into with Lebanon in 1953.

The issue of liability has been submitted to the court upon an agreed statement of facts which includes the provisions of the afore-mentioned maintenance agreement. In order for the plaintiff to prevail on such issue the court must find that the stoppage

of the elevator was due to defendant's negligence in the performance of its obligations under the maintenance contract, that its negligence in that regard was a proximate cause of the injuries sustained by the plaintiff and that plaintiff herself was free from contributory negligence.

With respect to the initial question of whether defendant was negligent in the performance of its maintenance obligations, it is conceded that the stalling and shutdown of the elevator car on October 8 was due to a defective plank switch which condition had also existed on October 1, causing a similar shutdown of the car on such prior date. It is further conceded that defendant's servicemen called at the premises on October 1 following such shutdown on which occasion they made no repairs beyond resetting the plank switch which was not adequate to correct the defective switch and constituted a failure to act with the reasonable care required in that regard.

While the defendant's obligations with respect to the maintenance, servicing and repair of the elevator herein were undertaken by way of contract, the nature of the instrumentality involved imposed upon defendant the further legal duty to perform those contractual obligations in a reasonably careful and prudent manner for the benefit of third persons using such instrumentality, including plaintiff, even though not parties to the maintenance agreement. (See *Wisner* v. *Harmas Holding Corp.,* 1 A D 2d 957; *Koch* v. *Otis Elevator Co.,* 10 A D 2d 464; *Wroblewski* v. *Otis Elevator Co.,* 20 A D 2d 732; *Kleinman* v. *Delfus Realty Corp.,* 25 Misc 2d 901.) While an injured elevator passenger would have recourse for defendant's negligent performance of its maintenance contract with the hospital, to sufficiently establish such negligent performance would require proof of the specific cause of the failure of the elevator and a showing either that defendant had prior knowledge of the condition which caused this stoppage and failed to act with reasonable care to correct it, or that it failed to use reasonable care to discover, and then correct, a condition which ought to have been found. (*Koch* v. *Otis Elevator Co., supra; Wroblewski* v. *Otis Elevator Co.,* 9 A D 2d 294.)

The conceded facts in this case establish that the stoppage of the elevator on October 8 was specifically due to a defective plank switch which had been inadequately repaired by defendant's employees a week earlier after said switch had caused a similar shutdown of the elevator involved. In light of the extensive maintenance and servicing obligations contractually assumed by defendant with respect to said elevator, defendant's admitted failure to use the reasonable care required to properly

correct, after notice, the specific defect which caused the elevator stoppage here complained of compel a finding that such stoppage was due to defendant's negligence (*Koch* v. *Otis Elevator Co.,* *supra*).

It is basic, of course, that such finding of negligence is not sufficient to impose liability upon the defendant unless it is further shown that such negligence was a proximate cause of the injuries suffered by the plaintiff and in the instant case it is that issue which is the focal point of the controversy.

The relevant facts from which a determination is to be made with respect to both proximate cause and contributory negligence are, pursuant to stipulation of the parties, as follows: that when the elevator car stalled at approximately 3:00 P.M. on October 8 it was carrying 11 persons, including plaintiff and an operator, and a portable EKG machine; that after the elevator had stalled the operator used the phone located in the car to call the building engineer for assistance; that said building engineer together with two other hospital employees arrived at the car some 25 to 30 minutes after it had come to a stop during which period the occupants had become increasingly restless and fearful with an air of hysteria arising in said car; that the engineer and his assistants, who had nothing to do with maintenance of the elevator, found the car stopped between the second and third floors with the top of the car extending some three feet above the third floor landing; that after opening the shaftway door with a key the rescue group forced open the elevator car door and lowered a six-foot ladder into the car with the bottom of said ladder resting on the floor of the car and the top extending onto the third floor landing and resting against it; and that when plaintiff, who was helped up the ladder, reached the point where she was about to go onto the third floor, she lifted her head and struck the top of the car, fracturing her skull.

It is conceded that the standard of conduct which defendant's own employees would have used under such circumstances would have been to remove the passengers by way of either the escape hatch in the roof of the car or the emergency door on the outside of the car, neither of which was used by the hospital employees, it further being conceded that both the door and hatch had to be opened with screw drivers from the inside.

It is defendant's contention that since plaintiff was not injured immediately upon the stalling of the elevator but rather suffered her injuries some 25 to 30 minutes later, while she was " imprudently and negligently " being pulled from the elevator by others, such injuries cannot be held to be proximately caused by defendant's negligence but are chargeable solely to the intervening

acts of those who were removing her from the elevator in such manner.

While the concept of proximate cause has been variously defined and much discussed, its ultimate dependency upon the precise factual pattern of each individual case has made absolute definition or conclusive explanation of such concept impossible and its meaning, consequently, is usually expressed in somewhat ephemeral and generalized terms. (See *O'Neill* v. *City of Port Jervis,* 253 N. Y. 423.) The classic definition of proximate cause describes it as that which in a natural and continuous sequence, unbroken by any new cause, produces the event, and without which that event would not have occurred. (*Rider* v. *Syracuse R. T. Co.,* 171 N. Y. 139.) The pragmatic limitations inherent in such terminology are self-evident. Perhaps a less cumbersome definition is that which concludes that negligent conduct is a legal or proximate cause of harm to another if such conduct is a substantial factor in bringing about the harm. The word " substantial " in this context means such an effect in producing the harm as to lead reasonable men to regard it as a cause, using the word in its popular sense. (See 2 Restatement, Torts, § 431 and Comments thereunder.)

More meaningful and specific guidelines are provided by various corollary rules which delineate the essential factors which are controlling in the quest for proximate cause. Such rules hold that in order to impose liability for an injury such injury must have been the natural and probable consequence of the defendant's negligent act or omission and, further, that the act of a party sought to be charged will not be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act. (*Ehrich* v. *Guaranty Trust Co. of N. Y.,* 194 App. Div. 658, affd. 233 N. Y. 637; *Saugerties Bank* v. *Delaware & Hudson Co.,* 236 N. Y. 425; *Bolsenbroek* v. *Tully & Di Napoli,* 12 A D 2d 376, affd. 10 N Y 2d 960. See, also, Ann. 155 A. L. R. 157; Ann. 100 ALR 2d 942.) The requirement that the injury must be one that was reasonably to be foreseen does not mean that the exact occurrence or the precise injury resulting from the act need be foreseen, all that is necessary is that the person charged with negligence should have been able to foresee that some injury to some person might result from his act. (Cf. *Lowery* v. *Manhattan Ry. Co.,* 99 N. Y. 158.)

Defendant's emphasis on the 25- to 30-minute lapse of time before plaintiff sustained her injury is misplaced. The mere fact that a period of time has elapsed between the negligent

act and the injury will not prevent the former from being regarded as the proximate cause of the latter. It is recognized that through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time and then only through new and fortuitous circumstances. (See *Schmidt* v. *Merchants Desp. Transp. Co.*, 270 N. Y. 287, rearg. den. 271 N. Y. 531; cf. *Luce* v. *Hartman,* 6 N Y 2d 786.)

Defendant's primary reliance is placed upon the fact that plaintiff's injury occurred only after the intervention of the acts of third parties, that is, the rescue efforts of the hospital employees, which defendant contends constituted an independent intervening cause which would supersede and exonerate any negligent conduct on its part as a proximate cause of plaintiff's injury.

It is true, as a general rule, that the act of a person will not be held the proximate cause of an injury to another where a new and independent agency has intervened and directly inflicted such injury. (See 1 Warren's Negligence 120, § 5.08 and cases cited therein.) This does not mean, however, that every intervening cause will operate to relieve the original negligent actor. On the contrary, a wrongdoer must answer for all the consequences that may ensue in the ordinary course of events, even though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result. (See 41 N. Y. Jur., Negligence, p. 50, § 37; *Wagner* v. *International Ry. Co.*, 232 N. Y. 176; cf. *Farr* v. *Wright,* 273 N. Y. 560, revg. 248 App. Div. 48.) The type of intervening cause which relieves the original wrongdoer is a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated. (See *Leeds* v. *New York Tel. Co.,* 178 N. Y. 118; cf. *McLaughlin* v. *Mine Safety Appliances Co.,* 11 N Y 2d 62, revg. 13 A D 2d 1036.) Where, however, harmful consequences are brought about by intervening and independent forces, the operation of which might have been reasonably foreseen, there is no break in the general causation of such character as to relieve the actor from liability and this is so even though they are the deliberate and independent but innocent acts of a human being. (*Carlock* v. *Westchester Light. Co.,* 268 N. Y. 345.) Accordingly, if the injury is the natural and probable consequence of the negligent act of the original actor, it remains none the less the proximate cause of the injury

though certain other factors and events intervened and perhaps carried the matter through to the foreseeable consequences. (Cf. *Francis C. Neale, Inc.* v. *New York Steam Co.,* 147 App. Div. 725; *Kingsland* v. *Erie County Agric. Soc.,* 298 N. Y. 409.) A statement with reference to intervening cause which is phrased in terms particularly appropriate to the fact pattern in the instant case is that of the Restatement which provides that an intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about. (2 Restatement, § 443.)

Based upon the preceding discussion it would appear that the decisive questions in this case are whether plaintiff's injury was a natural and probable consequence of defendant's negligent conduct and whether such consequences, including the intervening forces which contributed thereto, were reasonably foreseeable.

Defendant's negligence in this case consisted of improper maintenance of an elevator located in a hospital. The nature and character of the instrumentality clearly presaged the dangers reasonably to be anticipated upon a breakdown of such instrumentality. By reason of its location in a hospital it was to be expected that the elevator would be frequented by substantial numbers of people at any given time and that such crowded conditions would be likely to give rise to hysteria and charged emotions in the event of any prolonged period of confinement in such close quarters. Since the defendant kept no representative on the premises but performed its services on a visiting basis it was certainly to be anticipated that when an elevator broke down while carrying passengers immediate assistance would be sought from those available on the premises for prompt rescue of the persons thus imprisoned. While the breakdown of any passenger elevator would be likely to evoke some response designed to aid the passengers therein, the need and likelihood of speedy and effective assistance was especially to be expected in this case where the elevator serviced a hospital and could be carrying sick patients and/or vital hospital equipment or personnel. In light of such factors it was also reasonable to expect that efforts would be made to extricate the passengers from the elevator in the most direct and speedy manner which persons not expert in elevator maintenance might be expected to use. While it is true that there were certain methods available that would have been used by the defendant's own personnel, who were experts in this field, it was not to be expected that

those who would respond to the emergency created by defendant's negligence would be similarly expert. On the contrary, it should have been anticipated that those so responding would not possess such expertise and would be likely to use methods of rescue that might well be likely to expose the occupants of the car to the risk of injury. Such probability would be intensified by the emotional pressures likely to arise under such circumstances. Indeed, the hysteria and emotional climate reasonably to be foreseen on such crowded elevator would make natural the pursuit of the speediest, rather than safest, manner of extrication, and the obvious time factor involved in unscrewing the escape doors, assuming that lay persons would be familiar with such instrumentalities or have the necessary tools available, would make the use of some alternative rescue operation likely. The dangers to be foreseen from such anticipated rescue attempts included injury in the course of extrication. The fact that such may have been directly inflicted through the negligent acts of third persons would not relieve this defendant of responsibility since such intervening acts were reasonably to be anticipated as a normal response to a situation created by defendant's negligence and were a natural and probable consequence of that negligence. It is the defendant's conduct which set in motion the forces which ultimately resulted in injury to the plaintiff and all the succeeding events arose in direct response to its conduct in that regard. Under the facts of this case defendant's negligence constituted a proximate cause of the injury suffered by the plaintiff and it must be held responsible therefor even though the negligent acts of others may have concurred in the causation of said injury. (Cf. *Stallone* v. *Central Sav. Bank,* 287 N. Y. 824; *Luce* v. *Hartman,* 6 N Y 2d 786; *O'Neill* v. *City of Port Jervis,* 253 N. Y. 423, *supra*; *Williams* v. *Koehler & Co.,* 41 App. Div. 426.)

Insofar as any question of contributory negligence is concerned, under the facts of this case which establish that plaintiff had been confined in a crowded elevator for 25 to 30 minutes where an air of hysteria had developed, her conduct in using the means provided for her removal from a seeming place of peril cannot be said to be unreasonable. To impose any more stringent requirement upon her would be a departure from the standard of conduct which a person of ordinary prudence, placed in the same position, would have followed. (Cf. *Stallone* v. *Central Sav. Bank, supra.*)

In light of the foregoing findings the issue of liability is resolved in favor of the plaintiff.