MARY GUARINO, Individually and as Administratrix of the Estate of STEPHEN P. GUARINO, et al., Respondents-Appellants, et al., Respondents, v. MINE SAFETY APPLIANCES COMPANY, Appellant-Respondent.

Second Department, January 20, 1969.

*Daniel J. Coughlin* (*William F. McNulty* of counsel), for appellant-respondent.

*Domenic LaRosa* (*Aaron J. Broder* and *Sidney K. Margolis* of counsel), for Mary Guarino and another, respondents-appellants.

*Harry Kraf* (*Sidney K. Margolis* of counsel), for respondents and Louis Fattore, respondent-appellant.

CHRIST, Acting P. J. These consolidated actions to recover damages for wrongful death, conscious pain and suffering, and personal injuries arose out of the death of one John Rooney in a sewer tunnel. On October 2, 1957, Rooney, an engineer employed by the Bureau of Sewage Disposal of the Department of Public Works of the City of New York, descended into a sewer in Queens County to ascertain the source of certain water in a bulkhead. He was wearing an oxygen-producing mask which had been manufactured by the defendant, Mine Safety Appliances Company. On his way out of the tunnel he collapsed. He died of asphyxiation.

Rooney's estate brought suit for wrongful death and recovered a jury verdict of $55,000 against this defendant based on a cause of action for breach of an implied warranty of merchantability. The proof showed that Rooney died of asphyxiation because an oxygen pressure relief plunger on the mask had failed to function. On appeal, this court dismissed the complaint for failure to make out a prima facie case and affirmed the findings of fact implicit in the verdict; but the Court of Appeals reversed this court and reinstated the verdict (*Rooney v. Healy Co.*, 26 A D 2d 671, revd. 20 N Y 2d 42). However, the Court of Appeals specifically approved the crucial findings that Rooney was wearing the mask, that the mask contained a defectively designed oxygen pressure relief plunger which had malfunctioned, and that Rooney either became asphyxiated with the mask on or had pulled it off at some point and was asphyxiated by the poisonous gas which apparently had filled the sewer (20 N Y 2d 42, 45–46).

All the present plaintiffs, except the administrators of the estates of Guarino and Messina, were members of the sewer repair team which Rooney headed. Guarino and Messina were stricken by the lethal gas present in the sewer when they left their posts in the sewer shaft and entered the sewer tunnel without masks in an attempt to save Rooney. Guarino and Messina lived for two days after the accident. Fattore, Rooney's companion in the tunnel, was injured when he first tried to drag Rooney from the sewer tunnel by himself and then removed his own protective face mask (manufactured by a different company) to call for help. The four other plaintiffs who were injured were members of the team who left their stations in the shaft and on the street and descended into the sewer in response to Fattore's cries for help. For convenience, reference herein at

times to "the plaintiffs" shall encompass Guarino, Messina and the injured plaintiffs.

On causes of action for breach of implied warranty, Rooney's defective mask having caused his collapse and having brought the plaintiffs, would-be rescuers, into the lethal tunnel, the jury rendered a verdict for the plaintiffs against the defendant in various amounts. The amounts were as follows: for Guarino's death $300,000 and for his pain and suffering $20,000; for Messina's death $50,000 and for his pain and suffering $20,000; and for the injuries of the five other plaintiffs $7,500 for Fattore and $1,500 each for the others. The amounts as to Guarino and Messina were reduced to $225,000 and $20,000 for their deaths, respectively, and to $15,000 each for their pain and suffering.

The defendant attacks the judgment as an unwarranted and unjustified extension of breach of warranty liability to non-users of the defective instrumentality. We do not reach that question here. While technically premised on a breach of warranty theory as applied to a user, the present actions rest fundamentally on the "danger invites rescue" doctrine. The plaintiffs are recovering as would-be rescuers of a user with respect to whom a breach of warranty was committed.

It is no longer open to dispute that the defendant committed a breach of warranty with respect to Rooney, the user of its defectively designed mask, for which it has been held accountable in damages. In *Rooney* v. *Healy Co.* (20 N Y 2d 42, 47, *supra*), the the Court of Appeals held: "In *Goldberg* (*supra*) [*Goldberg* v. *Kollsman Instrument Corp.* (12 N Y 2d 432), in which recovery was granted in a wrongful death action against the manufacturer of an airplane that had crashed because of a defective altimeter, manufactured by another company] we spoke of casting liability upon the manufacturer who put the product into the market. Since the defendant [referring to the manufacturer who is also the defendant in the present actions] put into the market a mask, claimed to be defectively designed, it must be responsible for accidents to foreseeable plaintiffs resulting from such a defect, regardless of the chain of buyers. Of course, if the defect were unaccounted for, or one which could have arisen through the fault of prior users, this rule would not be applicable. In this case, since the defect was one in design, the action for breach of warranty is proper even though the mask was a used one.

" The order of the Appellate Division should be reversed and, since the findings of fact implicit in the verdict were affirmed below, it should be reinstated."

*Rooney* is *res judicata* as to the issues of causality in the present case. *B. R. DeWitt, Inc.* v. *Hall* (19 N Y 2d 141) is not distinguishable in any significant respect.

Legally, the present plaintiffs derive their right to recovery through Rooney, against whom the defendant committed a wrong. The rescue doctrine binds them together against the defendant. Factually, Rooney and the present plaintiffs are also related by reason of their working status as a team or crew. The defendant has already tenaciously fought the issue of its responsibility to Rooney's estate arising out of his use of the defective gas mask. It lost that critical battle in the Court of Appeals. As a matter of public policy, that question should not be litigated again in the present case.

Thus, it was unquestionably the defendant's wrongful act that imperiled Rooney and created the danger to which the present plaintiffs responded. In the landmark case of *Wagner* v. *International Ry. Co.* (232 N. Y. 176, 180), Judge CARDOZO enunciated the now famous doctrine: '' Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. *The wrong* that imperils life is a wrong to the imperilled victim; *it is a wrong also to his rescuer.* * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. *The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had* '' (emphasis added).

The *Wagner* case provides ample support for the jury's verdicts in the case now before us. It does not matter what label is put upon the original conduct of the wrongdoer, the defendant (cf. *Diemer* v. *Diemer*, 8 N Y 2d 206, 212). The technical classification was negligence in *Wagner*; it is breach of warranty in this case. Each classification has a common origin — fault or wrongdoing. As stated in *Goldberg* v. *Kollsman Instrument Corp.* (12 N Y 2d 432, 436, *supra*), '' A breach of warranty * * * is a tortious wrong '' and Judge CARDOZO in *Wagner* characterized the negligent conduct of the defendant in that case as a "wrong ". Just recently, the Court of Appeals spoke of the '' culpable act '' which places a person in a position of imminent peril and invites a rescuer (*Provenzo* v. *Sam,* 23 N Y 2d 256). If the '' danger invites rescue '' doctrine applies to a negligent wrong, we see no logical or practical basis upon which to deny its applicability to a breach of warranty wrong. It was the defendant's '' tortious wrong '' which endangered Rooney and invited the rescue attempts; thus, it makes no difference that

the predicate "wrong" was a breach of warranty rather than negligence.

In the present case, the surviving plaintiffs and the decedents, Guarino and Messina, responded to the call of danger, a danger created by the defendant. The rescue attempted here was more spontaneous than that attempted in *Wagner*. There was no time for deliberation when it became known that two members of the crew (Rooney and Fattore) were somehow in peril within the hostile environment of the deep sewer tunnel. They left their stations in the sewer shaft and on the street and descended into the sewer in response to the cries for help. These men were dependent upon one another and responded in a manner consistent with their relationship as a crew.

It is beyond dispute that these men were not reckless or wanton in their reaction. There was ample evidence from which the jury could conclude that they acted reasonably in the light of the emergency confronting them. So far as any of them knew, there was no gas present in the sewer. All the preliminary tests had registered negative. They did not know the exact nature of the problem within the sewer tunnel, only that there was danger to two of their crew members. That summons inspired their rescue attempt.

The plaintiffs are not recovering directly for breach of warranty any more than the would-be rescuer in *Wagner* recovered directly for the negligence of the defendant therein in turning the curve at too fast a rate of speed, thereby throwing the rescuer's cousin from the train. The predicate wrongdoing creates a new basis of recovery for the rescuers. That concept, enunciated in *Wagner,* permits recovery on behalf of a rescuer injured, not as a direct result of the original wrongdoing by the tort-feasor, but by some related circumstance. In *Wagner,* the related circumstance that caused the plaintiff's injuries was the rescuer losing his footing on the narrow pathway of the bridge, but he was there as a rescuer because of the railway's original wrongdoing. In the present case, the related circumstance that caused the plaintiffs' injuries and the deaths was the lethal atmosphere in the sewer tunnel, but the plaintiffs were there as rescuers because of Mine Safety's wrongdoing.

As stated in *Wagner*, a wrongdoer may not foresee the coming of a rescuer, but he is nevertheless charged with the responsibility as if he had foreseen it. If that concept applied in *Wagner,* it surely applies against this defendant which put on the market a defective instrumentality which, by its nature, was certain to be used in a dangerous environment.

In sum, these judgments, while nominally premised on a breach of warranty theory as applied to a user, rest fundamentally on the rescue doctrine, a concept unaffected by the exact label put upon the wrong which created the danger to the imperiled victim. For the same reason, the rescuer's status as a user or nonuser of the defective instrumentality is not directly relevant to our analysis. It is enough that the plaintiffs attempted to rescue a user with respect to whom a breach of warranty or " tortious wrong " had been committed.

We have examined the defendant's other specifications of error and find them to be without merit. We note, in particular, that the causes of action for breach of warranty contained in the amended complaint in the wrongful death actions were not barred by the Statute of Limitations. The original complaint, timely served, contained causes of action in negligence. As the underlying wrong, common to both the negligence and the breach of warranty causes of action, is the same — the defectiveness of the mask's pressure relief valve and its component parts — the causes of action for breach of warranty merely allege an additional theory of liability for the same wrong. They were not, therefore, completely new causes of action. Reason and fairness demand that the causes of action based on new theories of recovery relate back to the fundamental wrongful death actions, which were commenced prior to the expiration of the applicable limitations period (*Bernstein* v. *Remington Arms Co.*, 18 A D 2d 910; *Tobias* v. *Kesseler*, 18 A D 2d 1094).

In one respect we do agree with one of the defendant's claims — that the verdict in the Guarino wrongful death action, despite the stipulated reduction to $225,000, is still excessive. In our opinion, under all the facts and circumstances, a new trial should be granted as to that cause of action unless the plaintiff Guarino stipulates further to reduce that verdict to $185,000.

BRENNAN, BENJAMIN, MUNDER and MARTUSCELLO, JJ., concur.

Judgment of the Supreme Court, Kings County, entered January 9, 1968, affirmed insofar as it is (a) in favor of plaintiff Mary Guarino on a cause of action for conscious pain and suffering, and in favor of plaintiff Messina, upon a jury verdict as reduced by their stipulations, executed pursuant to an order of said court dated November 30, 1967, and (b) in favor of the other plaintiffs, upon said jury verdict.

Said judgment reversed, on the law and the facts, insofar as it is in favor of plaintiff Mary Guarino, as administratrix of the estate of Stephen P. Guarino, upon the jury verdict on a cause of action for wrongful death, which verdict was reduced to

$225,000 by her said stipulation, and severance and new trial granted as between said administratrix and defendant on that cause of action, limited to the issue of damages, unless, within 30 days after entry of the order hereon, said administratrix shall serve and file in the office of the Clerk of the trial court a written stipulation consenting to a further reduction in the amount of the verdict in her favor on the cause of action for wrongful death to $185,000 and to the entry of an amended judgment accordingly, in which event the judgment as to her as to that cause of action, as so further reduced and amended, is affirmed.

A separate bill of costs to all plaintiffs who filed separate briefs is awarded.