225 So.2d 541 (1969)
Raymond L. ADAIR, Appellant,
v.
THE ISLAND CLUB, St. Petersburg Beach, Florida, Inc., a Corporation; Jones Chemical, Inc., a Corporation, and Sun Sanitary Supplies, Inc., a Corporation, Appellees.
No. 68-367.
District Court of Appeal of Florida. Second District.
August 1, 1969.
*542 Thomas C. Marks, Jr., of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, for appellant.
Ross H. Stanton, Jr., of Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for appellee The Island Club.
Marvin E. Barkin, of Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, for appellee Jones Chemical, Inc.
Robert L. Williams, of Williams, Woodworth & Jacobs, St. Petersburg, for appellee Sun Sanitary Supplies, Inc.
PIERCE, Judge
Raymond L. Adair, plaintiff below, appeals the dismissal of his second amended complaint against The Island Club, Jones Chemical, Inc. and Sun Sanitary Supplies, Inc., defendants below. Adair elected not to plead further and moved the Court to enter order of dismissal with prejudice, which was done.
The order of dismissal stated that the pleadings affirmatively disclosed: that (1) plaintiff Adair, acting in his capacity as a member of the local Police Department and in line of his duty, was directed to the premises of The Island Club to assist persons suffering from exposure to the chlorine gas in question; (2) that Adair was a licensee in relation to the defendants and the complaint failed to allege sufficient facts to show a breach of duty between defendants and the plaintiff; (3) that the plaintiff and his activity fell beyond the foreseeability test; and (4) that the complaint failed to show a relationship between Adair and the defendants which would legally entitle him to the benefit of any alleged implied warranty.
The facts, as set forth in the second amended complaint, are as follows: On July 14, 1964, a large quantity of gas escaped from one or more bottles or containers in the swimming pool on Island Club's premises. The chlorine gas was supplied to Island Club by the defendant, Jones. The bottles or containers of the gas were delivered to Island Club by the defendant, Sun, pursuant to its arrangement *543 or contract with Jones. Soon after the escape of the gas, Adair, a member of the St. Petersburg Beach Police Department, in his official capacity, being on duty at the time, was directed to the premises of Island Club "for the purpose of rendering aid to the distressed individuals and to make the area safer for use." While he was there the manager of Island Club asked Adair to aid in removing the chlorine tank which had become dislodged from where it had been placed under water by emergency officials and was hitting against the seawall. The manager provided Adair with a gas mask. As Adair took the tank out to deeper water he inhaled a large quantity of gas from which he allegedly suffered injury.
The negligence and breach of warranty charged was (1) the alleged negligence of Island Club in failing to discover and remedy the defective and leaky condition of the chlorine gas containers, and with furnishing Adair a defective gas mask; and the alleged breach of warranty by Island Club that the mask was suitable for the job required; (2) the alleged negligence of Jones in having caused to be delivered to the premises defective containers of chlorine gas and the defective gas mask; and the alleged breach of warranty of Jones that the containers of chlorine gas and the mask were in safe and suitable condition for their intended purpose; (3) the alleged negligence of Sun in damaging the containers of chlorine gas that it was delivering from Jones to Island Club or in failing to discover and give notice that the containers were defective; and the alleged breach of warranty that Sun would safely transport the containers of chlorine gas.
Adair contends that at the time the manager of the Island Club suggested that he rid the area of the escaping gas by the removal of the container his duties as a city policeman had been completed and that his legal status was changed from a licensee to a business invitee. He quotes from Romedy v. Johnston, Fla.App. 1967, 193 So.2d 487, where the Court said:
"The position taken by appellant [that firemen should be implied invitees] has been considered and passed on by other courts in cases similar to the one now before us for review. This contention has been rejected for the reason that firemen, in the performance of their duties in attempting to extinguish fires and preserve property, enter upon the premises of others by permission of law and not at the invitation of the owner." (Emphasis supplied).
and asserts that when the manager of the Island Club invited him to remain on the premises and remove the tank, his status changed to that of business invitee.
We do not think that Romedy sustains his position. His complaint alleged that "as a portion of his duties [he] was obligated to and did make calls in response to emergencies for the purpose of rendering first aid, among other things, and making premises, dangerous at the time, safe or more safe from the problems which then existed." His duties as a policeman had not been completed until the emergency was over and the premises rendered "safe or more safe." He therefore remained a licensee as to The Island Club, and the duty owed to him by the owner of the premises was to refrain from wanton negligence or willful conduct which would injure him and to warn him of any defect or condition known to defendant to be dangerous if such danger was not open to ordinary observation by plaintiff. In Romedy v. Johnston, supra, the Court said:
"It is an established rule of law in this jurisdiction that the owner of premises owes to a licensee the duty to refrain from wanton negligence or willful misconduct which would injure the licensee. It is also held that if the owner has knowledge of pitfalls, booby traps, latent hazards, or other similar dangers, then a failure to warn such licensee could under proper circumstances amount to wanton *544 negligence, but there must be knowledge of the danger by the owner combined with knowledge that the licensee is about to be confronted with the danger."
See McNulty v. Hurley, Fla. 1957, 97 So.2d 185; City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644.
Adair failed to allege whether the defect in the gas mask was latent or obvious, or whether Adair knew of the condition of the mask or by the exercise of due care could have known of its condition, or whether the manager of The Island Club knew that the mask was defective. He merely alleged that "[t]he gas mask offered for use was defective and did leak, which condition such defendant knew or should have known upon reasonable examination or inspection, yet it negligently failed to do the same." The second amended complaint, failing to allege wanton negligence or willful conduct on the part of the defendant, The Island Club, was properly dismissed as to that defendant.
While some other jurisdictions take the opposite view, Florida has held in the case of Florida Power & Light Co. v. Bridgeman, 1938, 133 Fla. 195, 182 So. 911, 917, that an electric company is not relieved of duty to an injured person just because the path on which she was walking may have been on private land of a third party. The Court quoted from 20 C.J. 350 (See 29 C.J.S., Electricity, § 43, Licensees and Trespassers):
"`The doctrine of nonliability to trespassers or licensees has been applied to relieve defendant of liability where the trespass or license was with respect to the property of a third person and not that of the defendant. But according to the apparent weight of authority that doctrine has no application to such class of cases, because conceding that plaintiff was trespasser as to the owner, he was not a trespasser as to the defendant, and the defendant may be held liable for negligence in failing to exercise proper care and precaution to prevent injury, not only as to persons who had a right to be at the place where the injury occurred, but also to persons whom defendant should reasonably have anticipated might be present and exposed to danger at that place, as in the case of places to which children or other persons are accustomed to resort although without technical right to be at such places.'"
The Court held that the electric company owed Mrs. Bridgeman the duty of not negligently causing her death, "and that the electric company was charged with a high degree of care in handling of its dangerous business of transmission of electricity is well settled."
In Baker v. Thompson-Hayward Chemical Company, Mo. App. 1958, 316 S.W.2d 652, the Kansas City Court of Appeal said that "the release of a poisonous gas at a place where people are or have the right to be, would create a dangerous and an unsafe condition as a matter of law," and defined chlorine as:
"Webster's New International Dictionary, Second Edition, defines `chlorine' as `a heavy greenish-yellow irritating gas of disagreeable odor. When inhaled in quantity, it is poisonous. * * * It is an essential ingredient of most war gases.' The same definitions and conclusions are recognized in medical treatises such as Legal Medicine Pathology and Toxicology, Gonzales et al., page 717, and Dorland's Medical Dictionary."
See also May v. Allied Chlorine & Chemical Products, Inc., Fla.App. 1964, 168 So.2d 784.
Chlorine is an inherently dangerous commodity and, as stated in Tampa Drug Company v. Wait, Fla. 1958, 103 So.2d 603, 75 A.L.R.2d 765:
"The measure of the duty of the distributor of an inherently dangerous commodity is now well established to be the *545 reasonable foreseeability of injury that might result from the use of the commodity."
The lower Court held that the second amended complaint affirmatively shows that Adair and his activity on the date in question fall beyond the foreseeability test applicable to cases of this nature. The general rule is that a defendant is liable to a plaintiff only if the injury to plaintiff could be reasonably foreseen or anticipated as the probable result of the defendant's negligence, without the intervention of any independent cause. Cone et al. v. Inter-County Telephone and Telegraph Co., Fla. 1949, 40 So.2d 148.
Adair contends that he was acting in the capacity of a rescuer, and that injury to a rescuer without the independent intervening action of a third party is within the foreseeability test. He cites Rose v. Peters, Fla. 1955, 82 So.2d 585, to show that Florida has recognized the rescue doctrine. In that case the Court held that the rescue doctrine could not be invoked to offset contributory negligence for the reasons, among others, that Mr. Rose, the injured party, was aware of the dangerous condition for two hours before work was commenced on the roof but did not warn his men of its dangerous condition; there was no showing of tortious acts of the defendant contributing to the rescue; and the defects in the roof were not latent or concealed, but were obvious.
In the case sub judice Adair was aware of the dangerous condition. He did not allege that the defendants were guilty of negligence to the person rescued or contributed to the rescue. At the time he proceeded to remove the chlorine tank to a safe distance out into the Gulf of Mexico, there was no one in imminent peril. In the cases cited by Adair, the injured persons were attempting to rescue persons in distress. Wagner v. International Railway Company, 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1; Guarino v. Mine Safety Appliances, 1969, 31 A.D.2d 255, 297 N.Y.S.2d 639; Cafone v. Spiniello Construction Company et al., 1956, 42 N.J. Super. 590, 127 A.2d 441; Bilyeu v. Standard Freight Lines, 1960, 182 Cal. App.2d 536, 6 Cal. Rptr. 65; Walker Hauling Company v. Johnson, 1964, 110 Ga. App. 620, 139 S.E.2d 496. In Kelley v. Alexander, Tex.Civ.App. 1965, 392 S.W.2d 790, Mrs. Kelley, the plaintiff, was injured when she fell into a hole while dragging a tree limb over it to discourage children from approaching it. The hole had been dug by defendant's employees. The Court said:
"The evidence in this case does not show that Mrs. Kelley voluntarily exposed herself to danger to rescue another person from imminent peril, but rather that she was discharging her duty as owner of the premises in making the premises safe for the small children who she knew frequented same. In doing so she knowingly and voluntarily assumed the risk of falling in the hole dug by appellee's employees. In this situation the volenti doctrine bars her recovery."
It is clear from the allegations of the complaint that Adair's role as a rescuer had been completed when he sustained his injuries. He alleged that "his duties as a City policeman at this point had been completed." In his brief he stated:
"Soon after the escape of the chlorine gas, the Plaintiff in his official capacity as a St. Petersburg Beach police officer (being on duty at the time) was directed to the premises of Defendant Island Club to assist the numerous people who were injured by the gas. After this mission was successfully accomplished the manager of Defendant Island Club called it to the attention of Plaintiff that the (or one of the) faulty and leaking containers of gas had become dislodged from the location where it had been placed under water by certain emergency officials who had been on the scene earlier and the manager said that the container would have to be removed." (Emphasis supplied).
*546 We hold that the rescue doctrine has no application to Adair's activities and the lower Court was correct in holding that his activities fell beyond the foreseeability test.
Adair questions the lower Court's holding that the complaint failed to show a relationship between him and the defendants which would legally entitle him to the benefit of any alleged implied warranty. In his second amended complaint he alleged that Jones was engaged in the business of owning and supplying to the consuming public chlorine or other gas which it delivered to its customers in bottles or other containers; that on or prior to the date of the injury it sold or rented and had delivered certain of its bottles or other containers which contained chlorine or other gas to the premises of The Island Club's swimming pool; that Jones impliedly warranted or represented said containers were in good and safe condition, suitable for storage and safe to be stored where the plaintiff and other humans might expect to be and that he sustained the injuries as a result of Jones's implied representation. Adair also alleged that Sun had an arrangement or contract with Jones to deliver its bottles or other containers of chlorine or other gas to the swimming pool premises; that by virtue of its arrangement or contract it impliedly warranted or represented to Jones or to the other defendants that it would transport these bottles or containers without damaging them; that it did damage the bottles or containers, or in the alternative did receive the bottles or other containers in a damaged or defective condition; and that Adair sustained injuries as a result of such breach by Sun.
Adair relies on Toombs v. Fort Pierce Gas Co., Fla.1968, 208 So.2d 615, for the proposition that the liability of the owner or manufacturer of an inherently dangerous instrumentality or substance under the doctrine of implied warranty has been extended to those who should be expected to be in the vicinity of the probable use of that instrumentality or substance. Sun is alleged to have been merely a transporter and would not be liable under the rule set forth in Toombs, supra. While chlorine gas, as stated above, is a dangerous commodity, the dangerous instrumentality qualification of the privity requirement in warranty of the chlorine containers cannot be applied in the case sub judice because it is clear from the allegations that Adair did not act in reliance on the implied warranty of the defendants. The allegations show that Adair was aware of the dangerous condition of the chlorine containers, but nevertheless proceeded to remove the defective gas tanks. As stated in Keating v. DeArment, Fla. App. 1967, 193 So.2d 694, "[t]o support liability upon the contractual warranty the purchaser must have relied thereon." See Barefield v. LaSalle Coca Cola Bottling Co., 1963, 370 Mich. 1, 120 N.W.2d 786; 77 C.J.S. Sales § 310(e), p. 1143; 1 Williston on Sales, § 206. And in Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299, the Supreme Court of Florida said, "[a]n implied warranty does not protect against hazards apparent to the plaintiff." See also Green v. American Tobacco Company, Fla. 1963, 154 So.2d 169; Lambert v. Sistrunk, Fla. 1952, 58 So.2d 434; 1 Williston on Sales, § 207.
Adair further alleged that The Island Club owned or had in its possession a defective gas mask which it made available to and offered to Adair for the purpose of ridding the area of the damaged or defective gas containers; that the manager of The Island Club advised that the mask was one supplied specifically for use in working with chlorine gas and impliedly warranted its reasonably safe condition; that Jones rented or sold and delivered to The Island Club certain gas masks which it impliedly warranted or represented were in good condition, suitable for use in the use of chlorine gas, while in truth they were damaged and unsafe; and that plaintiff sustained injuries as a result of these defendants' implied representations.
*547 The Courts of Florida have held that privity of contract is not required to support an action by a consumer against a manufacturer for breach of implied warranty of a product whether inherently dangerous or not, Lily-Tulip Cup Corporation v. Bernstein, Fla. 1966, 181 So.2d 641; Barfield v. Atlantic Coast Line Railroad Company, Fla.App. 1967, 197 So.2d 545, but this rule has not been extended to owners or distributors of commodities which are not inherently dangerous. Toombs v. Fort Pierce Gas Co., supra, involved an action brought by bystanders and others against the owner of a propane gas tank which exploded, injuring the plaintiffs. The Supreme Court held that the dangerous instrumentality exception to the privity requirement was applicable and its effect was to extend liability to persons one should expect to be in the vicinity of the probable use of the chattel. The obligation of a distributor or wholesaler of a commodity inherently dangerous is not restricted to the immediate purchaser. Tampa Drug Company v. Wait, Fla. 1958, 103 So.2d 603, 75 A.L.R.2d 765; Continental Copper & Steel Indus. v. E.C. "Red" Cornelius, Inc., Fla.App. 1958, 104 So.2d 40; Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299. Tampa Drug Company v. Wait, supra, described an inherently dangerous commodity as "a commodity burdened with a latent danger which derives from the very nature of the article itself." And in Matthews, supra, it was said that "[d]angerous instrumentalities have been defined as those which by nature are reasonably certain to place life and limb in peril when negligently constructed, such as airplanes, automobiles, guns and the like." A gas mask cannot be classified as an inherently dangerous commodity and therefore comes within the principle stated in Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390, that "one who is not in privity with a retailer has no action against him for breach of an implied warranty, except in situations involving foodstuffs or perhaps dangerous instrumentalities." See also this 2nd District Court's opinion in Brown v. Hall, Fla.App. 1969, 221 So.2d 454, text 458-459.
The second amended complaint failed to state a cause of action against the defendants named therein, and was properly dismissed. The amended order of dismissal is therefore
Affirmed.
LILES, A.C.J., and McNULTY, J., concur.