Adrienne King HASSANEIN and Richard C. Hassanein, Plaintiffs,

v.

AVIANCA AIRLINES, Defendant.

No. 90–CV–2069 (TCP).

United States District Court, E.D. New York.

Jan. 10, 1995.

E. Kevin Agoglia, Agoglia, Fassberg, Magee & Crowe, P.C., Mineola, NY, for plaintiffs Adrienne King Hassanein and Richard C. Hassanein.

Michael J. Holland, Condon & Forsyth, New York City, for defendant Avianca Airlines.

### MEMORANDUM AND ORDER

PLATT, Chief Judge.

Plaintiffs Adrienne King Hassanein and Richard C. Hassanein ("the Hassaneins") bring this personal injury cause of action against Aerovias Nacionales De Colombia, S.A. ("Avianca"). Mrs. Hassanein claims she is entitled to recover damages from the defendant as a result of suffering severe emotional distress from her exposure to the rescue scene of the Avianca airplane crash in Cove Neck, New York. In addition, she seeks damages for personal injuries and related emotional distress resulting from a fall in her home. Mr. Hassanein asserts a claim of loss of services of his wife incident to her injuries. Lastly, the Hassaneins seek compensation for property damage to their home.

Avianca now moves for an Order of this Court granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants assert that plaintiffs' personal claims are not compensable under New York law. With respect to the property damage claim, Avianca argues that plaintiffs have been compensated fully under their insurance policy. Plaintiffs oppose this motion arguing that they have alleged material facts sufficient to survive summary judgment. Plaintiffs assert that defendant's negligence was the proximate cause of her physical and emotional injuries and that defendant owed her a duty of care under the doctrine of "danger invites rescue."

For the reasons stated herein, defendant's motion for summary judgment is granted in part and denied in part.

### BACKGROUND

On January 25, 1990, Avianca Flight 052 crashed in the vicinity of Cove Neck, New York. The Hassaneins were neither passengers nor related to any passengers on flight 052. At the time of the crash, Mrs. Hassanein ("plaintiff") was watching television in her home that was located about 50 to 100 yards from the crash site. Mr. Hassanein was in New York City and only learned of the disaster after receiving a telephone call from his wife. Following the telephone call, he drove to the accident site where he met her.

Upon hearing an explosion, feeling a vibration, and observing a glow, Mrs. Hassanein immediately phoned the police and then her husband. Plaintiff claims that she then left her home and went to the scene of the crash after hearing screams and the sounds of babies crying. On the way to the accident site she found herself standing in calf-deep pools of fuel. She claims she was frozen by the fear of another explosion until she was assisted out of the fuel by a passing fire fighter onto what appeared to be a part of the cockpit of the plane.

Despite witnessing the carnage at the site, plaintiff maintains that she continued actively to assist the rescuers. She was never physically harmed while there, and she remained at the scene until her husband arrived at 11 p.m. The Hassaneins allowed the police to use their home as an emergency center throughout the night and into the next morning.

Plaintiff alleges that she sustained severe psychological injuries from her participation

in the rescue attempts. Specifically, she attributes these problems to witnessing the human tragedy and suffering at the crash site and her own fear associated with her rescue attempt. She does not allege that any physical injuries occurred at that time.

On the other hand, plaintiff claims that she permanently injured her knee in her home three months later as a result of damage to the home from the impact of the crash. Plaintiffs allege in the complaint that "due to the extensive damage done to the premises and property of the plaintiffs, this plaintiff was caused to sustain serious and permanent physical injuries when she was precipitated down an inside stairway." Thus, plaintiffs attempt to link Mrs. Hassanein's alleged physical injury to the impact of the crash. According to the Hassaneins, these injuries have cost them exorbitant hospital fees and caused psychological suffering to Mrs. Hassanein.

Mr. Hassanein's claims are derivative in that they stem from the alleged loss of services of his wife. He asserts that his own income has been affected by her physical injuries because she is no longer able to assist him with his business. He also claims that his relationship with his wife has been impaired as a result of her emotional and physical injuries.

Lastly, plaintiffs seek to recover for structural damage to their home. Plaintiffs settled with their insurer, the Vigilant Insurance Company, and received $326,546.33 in full settlement of their property damage claims arising out of the Avianca crash. In a separate action, Vigilant has settled for this amount with Avianca. It is not clear from the papers whether any portion of the releases therein involved any and all claims for personal injury.

## DISCUSSION

### I. Summary Judgment Standard.

■ Summary judgment challenges the legal sufficiency of the claim or defense to which it is addressed. 10a CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2725 (1983). A court will grant a motion for summary judgment if the pleadings, affidavits, and admissions show that there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of demonstrating that the facts adduced fail to establish the existence of an essential element to that party's case. *Celotex v. Catrett, Administratrix of the Estate of Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant successfully carries this burden, the burden shifts to the nonmoving party to establish that a "rational trier of fact [could] find for the nonmoving party [or] that there is a genuine issue for trial." *Historic Preservation Guild of Bay View v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989) (*quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). *See also, Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.1991). The court, in considering the evidence, must and does resolve all ambiguities and draw all reasonable inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153–161, 90 S.Ct. 1598, 1606–10, 26 L.Ed.2d 142 (1970).

### II. Negligent Infliction of Emotional Distress.

■ Mrs. Hassanein seeks to recover for negligent infliction of emotional distress and the costs of related medical care. She claims she was traumatized by witnessing the human suffering and devastation that ensued from the crash. It is axiomatic that to establish liability in a negligence case, a plaintiff must establish the following: (1) duty, (2) breach of duty, (3) the alleged breach of duty proximately caused injury, and (4) damages resulted. RESTATEMENT (SECOND) OF TORTS § 433 Cmt. c (1977). *Perrin v. Hilton International, Inc.,* 797 F.Supp. 296, 299 (S.D.N.Y.1992) (denying claims for negligent infliction of emotional distress and loss of consortium). For the reasons stated below, this Court finds that Mrs. Hassanein may not sustain a claim for negligent infliction of emotional distress, nor may her husband assert derivative claims based on her claim.

New York law compensates those who suffer from negligent infliction of emotional distress in two circumstances: (1) if plaintiff was within the zone of danger at the time she witnessed injury to a family member; or (2) if the negligent defendant owes plaintiff a direct duty of care and plaintiff sustains emotional injury as a result of breach of that duty. *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504, 448 N.E.2d 1332, 1334, 462 N.Y.S.2d 421, 423 (1983) (denying recovery to dentist who alleged negligent infliction of emotional distress as a result of his mistakenly administering toxic gases to patient); *see also, Battalla v. State of New York*, 10 N.Y.2d 237, 176 N.E.2d 729, 219 N.Y.S.2d 34 (1961) (overruling *Mitchell v. Rochester Ry. Co.*, 151 N.Y. 107, 45 N.E. 354 (1896) which had precluded recovery where there was no physical impact); *Casale v. Unipunch, Inc.*, 177 A.D.2d 1029, 1029, 578 N.Y.S.2d 46, 47 (4th Dep't 1991). Plaintiff concedes that she was not in the "zone of danger" under applicable New York law. *See, Bovsun v. Sanperi*, 61 N.Y.2d 219, 227, 461 N.E.2d 843, 473 N.Y.S.2d 357 (1984) (limiting recovery to family members). Thus, this Order shall only address the issue of whether plaintiff has alleged sufficient facts to show that defendant may have breached a special duty of care towards her.

Plaintiff maintains that defendant owed her a special duty of care under the "danger invites rescue" doctrine. Under this doctrine, the negligent party is liable not only to the person imperiled as a result of the negligence, but also to the person who attempts a rescue. *Wagner v. International Ry. Co.*, 232 N.Y. 176, 180, 133 N.E. 437, 437–38 (1921) (allowing recovery for claimant who was injured while attempting to rescue his cousin who had been thrown from a moving train); *Guarino v. Mine Safety Appliances Co.*, 31 A.D.2d 255, 260, 297 N.Y.S.2d 639, 644 (2d Dep't), *aff'd*, 25 N.Y.2d 460, 255 N.E.2d 173, 306 N.Y.S.2d 942 (1969) (determining that a wrongdoer is charged with responsibility to foresee the coming of a rescuer); *Ha–Sidi by Ha–Sidi v. South Country Cent. School Dist.*, 148 A.D.2d 580, 582, 539 N.Y.S.2d 47, 48 (2d Dep't 1989) (doctrine creates duty of care towards potential rescuer when the actor places another person in a position of imminent peril which invites another person to come to his aid); *Trott v. Dean Witter & Co.*, 438 F.Supp. 842, 845 (S.D.N.Y.1977) *aff'd*, 578 F.2d 1370 (2d Cir. 1978) ("The rationale for the doctrine is that ordinary standards of negligence should not be applied to the actions of one responding to a situation of great danger, which requires an instantaneous decision as to how to act.").

An important qualifier to the doctrine is that a plaintiff rescuer must act reasonably "in light of the emergency confronting him." *Wagner*, 232 N.Y. at 182, 133 N.E. at 438. In other words, the negligent defendant will only be responsible for a rescuer's injury if the rescuer's actions were reasonably "fitted and proportioned to the time and the event." *Id. See also, O'Keeffe v. State of New York*, 140 A.D.2d 998, 1000, 530 N.Y.S.2d 911, 912 (4th Dep't 1988) (finding that drowning victims' decisions to rescue imperiled nine-year-old family member were not reckless, wanton, or rash); *Prior Aviation Service, Inc. v. State of New York*, 100 Misc.2d 237, 242, 418 N.Y.S.2d 872, 877 (N.Y.Ct.Cl.1979) (decision to rescue in the presence of a clear emergency, and imminent danger was reasonable under the circumstances).

Plaintiff asserts that she acted reasonably in responding to the emergency by rushing to the aid of a number of unknown injured persons in response to her instinct to save human lives. Plaintiff claims that she directed emergency vehicles and allowed her home to become an emergency command post. In light of these facts a court could find evidence to support the conclusion that Mrs. Hassanein acted reasonably in going to rescue the victims of the crash.

On the other hand, reasonable or not, Mrs. Hassanein's actions seem to fall short of the qualification of "rescuer" for whom the New York courts have been so willing to develop and extend the doctrine of "danger invites rescue." *See, Wagner*, (plaintiff walked along and fell from a suspended train trestle at night in an effort to find his cousin who was thrown from a train) *O'Keeffe*, 140 A.D.2d at 998, 530 N.Y.S.2d at 912 (father and son dove into the Niagara River in the

springtime and drowned in an attempt to save a young family member); *cf., Ha–Sidi*, 148 A.D.2d at 581, 539 N.Y.S.2d at 48 (denying recovery to an eighth grade student who stepped in to break up a fist-fight between his classmates). Mrs. Hassanein's efforts amounted to directing traffic and allowing the emergency services to use her home during the night. There is no evidence that she administered any type of emergency care to the victims of the crash. Thus, the facts tend to show that while she may have been helpful that night, taken together, her actions appear to be more like those of a bystander, who clearly may not recover under New York law.

■ Moreover, while plaintiff's behavior was noble, and possibly significant, it was voluntary behavior that is not compensable under the doctrine of "danger invites rescue." Contemporaneous to the New York courts' development of the doctrine, the courts also have held strong reservations against compensating plaintiffs who claim purely emotional injuries as a result of witnessing injuries to others. *See, e.g., Tobin v. Grossman*, 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969) ("no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another ...."); *Battalla*, 10 N.Y.2d at 242, 176 N.E.2d at 731, 219 N.Y.S.2d at 38 (requiring a "genuineness of proof" of emotional injuries in order to weed out fraudulent claims). Thus, it has developed that an integral basis for granting recovery under New York law is that the claimant sustain physical injuries during the rescue.

In this case, the nature of plaintiff's alleged injuries sustained on the night of the crash are purely psychological. Importantly, as the New York Court of Appeals stated: "We have never held that a rescuer can recover for psychic injury sustained only as the result of observing the person he or she intended to rescue suffer from the defendant's negligence." *Lafferty v. Manhasset Medical Center Hospital*, 54 N.Y.2d 277, 279, 429 N.E.2d 789, 790, 445 N.Y.S.2d 111, 112 (1981). Notably, although recovery for purely psychic injuries was granted in *Shanahan v. Orenstein*, 52 A.D.2d 164, 167, 383

N.Y.S.2d 327, 329 (1st Dep't 1976) the important difference is that plaintiff there was found to have been in the zone of danger. As stated above, plaintiff concedes that she was not in the zone of danger, and although she attributes some of her alleged emotional difficulties to her experience of walking into the fuel, (from which she had to be rescued), she does not contend that she was physically harmed as a result. Therefore, because plaintiff sustained no physical injuries, no special duty can attach to her efforts. Thus, as a matter of law, plaintiff may not recover from defendant under the doctrine of "danger invites rescue."

### III. Physical Injury

■ Mrs. Hassanein's claims for her physical injuries are grounded in a claim based upon Avianca's alleged failure to operate its aircraft properly: a breach of duty owing directly to her as a homeowner. She now alleges (*cf.*, allegations in complaint, *supra*) that the impact of the crash on the ground in effect weakened the structural integrity of her staircase and this weakening eventually caused her to fall down the stairs three months later and injure her knee. She claims in her present memorandum that when she walked downstairs without any lights on during the middle of the night "a step, pitched or tilted, and a loosened handrail gave way causing her to be propelled to the bottom of the staircase."

It is not clear from the papers submitted here whether or not an examination of the staircase, step and handrail was done before or after the fall or what it would have revealed. It is also not clear when and by whom an inspection of the home was made by defendant or the insurance company with respect to the property damage claim. It may well be that the primary fault lies not with Avianca but with the inspector who advised the insurance carrier as to what damage was done to the various parts of the house.

■ As with many negligence cases the difficult question presented by this summary judgment motion is whether or not the causation element has been met: whether or not the impact of the crash proximately

caused plaintiff's knee injury. Proximate cause is often described as that which in a natural and continuous sequence, unbroken by any new cause, produces the event, and without which that event would not have occurred. *Hoggard v. Otis Elevator Co.*, 52 Misc.2d 704, 707, 276 N.Y.S.2d 681, 686 (N.Y.Sup.1966), *aff'd*, 28 A.D.2d 1207, 285 N.Y.S.2d 262 (1st Dep't 1967). Moreover, proximate causation is limited by the requirement that some injury was a reasonably foreseeable result of the negligence. *Id.*, 52 Misc.2d at 707, 276 N.Y.S.2d at 687; *see also, Martinez v. Lazaroff*, 66 A.D.2d 874, 875, 411 N.Y.S.2d 955, 958 (2d Dep't 1978), *aff'd*, 48 N.Y.2d 819, 399 N.E.2d 1148, 424 N.Y.S.2d 126 (1979) (quoting, *Pagan v. Goldberger*, 51 A.D.2d 508, 511–12, 382 N.Y.S.2d 549, 550 (2d Dep't 1976)). The most troublesome proximate cause problem here is, of course, that the alleged injury occurred three months after the crash. Thus, the issue here is whether, as a matter of law, the injury is too attenuated to the crash to establish proximate causation. The Court is mindful that summary judgment is not usually granted in negligence actions because when the question of causation is at issue, that question is best left in the domain of the jury. *Battalla*, 10 N.Y.2d at 242, 176 N.E.2d at 731, 219 N.Y.S.2d at 38. Therefore, for the reasons discussed below defendant is not entitled to summary judgment, as a matter of law, with regard to plaintiff's physical injury.

There are issues of fact that are in dispute and which preclude summary judgment. First of all, the closeness of the crash to plaintiff's home and the vibrations she felt from the explosions indicate a possibility that the impact of the crash damaged the structure of her home in a manner which could have had an effect on the staircase. On the other hand, a jury might find that plaintiff's personal injury claims are indeed disingenuous and noncompensable. The length of time between the crash and the alleged injury and the fact that plaintiff was well aware of the damage to the house, and recovered a substantial sum for its repair and related costs, certainly might weigh against recovery for this claim.

Defendant argues that plaintiff's injuries are too speculative and she may not prevail because too much time elapsed between the crash and the shifting of the staircase. The amount of time, however, will not automatically determine the proximate causation issue. *Hoggard*, 52 Misc.2d at 707, 276 N.Y.S.2d at 687; RESTATEMENT (SECOND) OF TORTS § 433 cmt. f (1977) ("[a] mere lapse of time, no matter how long is not sufficient to prevent [an actor's conduct] from being the legal cause of the other's harm"). As arguably applicable to this case, "[i]t is recognized that through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time and then only through new and fortuitous circumstances." *Hoggard*, 52 Misc.2d at 708, 276 N.Y.S.2d at 687. Indeed, the impact of the plane crash could possibly have had such an effect that the house settled intermittently over the following months. For example, in *Ostrowski v. Massa*, 168 A.D.2d 964, 564 N.Y.S.2d 914 (4th Dep't 1990) the court found that defendant's use of a jackhammer on concrete steps adjacent to plaintiff's porch, a year before the porch collapsed, could have affected the structural integrity of the porch. Thus, the court found that summary judgment was inappropriate despite the one year lapse of time.

Like the defendant in *Ostrowski*, defendant here failed to offer any evidence that its actions did not affect the structural integrity of the plaintiffs' house in a way that could not have also damaged the staircase. By relying merely on the theory that three months time is simply too long after the crash to satisfy the proximate causation requirement, defendant has failed to offer any evidence such as an intervening force, knowledge of the stairway condition on the part of the plaintiff which would suggest a break in the chain of causation or the opinion of an expert that the causation claimed here was extremely unlikely or impossible. *Cf., Hoggard*, 52 Misc.2d at 708, 276 N.Y.S.2d at 687 (criticizing defendant for relying on the lapse of time argument but addressing defendant's main contention that third parties had intervened). Moreover, setting aside the lapse of time argument, defendant has not stated any rea-

son why, as a matter of law, it was not reasonably foreseeable that a person whose home was damaged by the impact of the crash might not be injured in that home at a subsequent date.

In addition to the issue of whether or not one or more intervening events caused the shifting of the staircase or caused plaintiff to fall, is the issue of whether plaintiff knew or should have known of the condition of the staircase (particularly in light of the property damage she claimed and has already recovered for as to her home). *See, Slomin v. Skaarland Construction Corp.*, 207 A.D.2d 639, 615 N.Y.S.2d 941, 943 (3rd Dep't 1994) (finding plaintiff's knowledge of the potentially dangerous condition of a lack of flooring directly in front of a staircase to be a triable issue of fact). Plaintiff's allegations indicate the stair step pitched or tilted inferring that the damage was latent. On the other hand, the fact that the house was affected by the impact of the crash was well known to the plaintiffs, and they may have had a duty of care to avoid any known or suspected risks in the home prior to its renovation. In particular, plaintiffs allege secondarily (i.e. "to compound matters") that "a step, pitched or tilted, and a loosened handrail gave way" suggesting that the handrail may have been loose for three months and that this was well known to plaintiff. Nevertheless, these issues are best left to the jury to decide, further indicating that summary judgment is inappropriate here.

Thus, as defendant cannot sustain its burden of showing that plaintiff can in no way prevail, its motion for summary judgment is denied on this issue.

## IV. Property Damage

■ Plaintiffs also seek compensation for property damage to their home. This is evidence of overreaching. Plaintiffs waived their recovery rights by assigning the claim to their insurance company, the Vigilant Insurance Company, and accepting a settlement of $326,546.33. Avianca subsequently settled the subrogation claim brought by the insurance carrier. At this point, plaintiffs are simply seeking double recovery to which, of course, they are not entitled. Thus, defendant's motion for summary judgment on the issue of property damage must be and is hereby granted.

## V. Spouse's Derivative Claims

■ Mr. Hassanein seeks recovery for loss of consortium of his wife. He alleges, among other things, that his relationship with his wife has degenerated significantly as a result of the crash. He also claims she used to help him with his business, and is no longer able to do so. Consequently, his business has suffered.

■ Loss of consortium is a derivative claim; as long as the defendant is liable to an injured spouse, a valid cause of action can exist for the other spouse. *See, Perrin*, 797 F.Supp. at 302 (dismissing loss of consortium claim where spouse's negligence action was dismissed); *Siskind v. Norris*, 152 A.D.2d 196, 198, 548 N.Y.S.2d 160, 162 (1st Dep't 1989). " 'The concept of consortium includes not only loss of support of services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more.' " *Delosovic v. City of New York*, 143 Misc.2d 801, 810, 541 N.Y.S.2d 685, 691 (N.Y.Sup.Ct.1989) (quoting, *Millington v. Southeastern Elevator Co., Inc.*, 22 N.Y.2d 498, 502, 239 N.E.2d 897, 899, 293 N.Y.S.2d 305, 308 (1968)), *aff'd*, 174 A.D.2d 407, 572 N.Y.S.2d 857 (1st Dep't 1991). Derivative claims such as these are " 'predicated on physical or mental injury or incapacity of that spouse.' " *Delosovic*, 143 Misc.2d at 811, 541 N.Y.S.2d at 692 (quoting, *Shearer v. Mooney*, 109 A.D.2d 1104, 1104, 487 N.Y.S.2d 206, 206 (4th Dep't 1985)).

■ As stated above, summary judgment is granted in favor of defendant as to Mrs. Hassanein's claims for emotional injuries. Accordingly, summary judgment is granted in favor of defendant as to Mr. Hassanein's claims for loss of consortium based on his wife's emotional injury claims. On the other hand, if a jury finds that Avianca is responsible for Mrs. Hassanein's physical injury, Mr. Hassanein's derivative claims are possibly compensable. *See, Perrin*, 797 F.Supp. at 302. Thus, summary judgment is granted in part and denied in part with regard to Mr.

Hassanein's claims for loss of consortium: it is granted as to his claims based on his wife's alleged emotional injuries, and denied as to his claims based on her alleged physical injury.

## CONCLUSION

Where plaintiffs had no family members aboard Avianca flight 052 and Mrs. Hassanein did not suffer any physical harm from her efforts at the crash scene, summary judgment is granted in favor of defendant on the issue of negligent infliction of emotional distress and related medical costs. Summary judgment is also granted for defendant on plaintiffs' property damage claim. Summary judgment is, however, denied on the issue of whether plaintiff's knee injury resulted from defendant's negligence as defendant cannot show that plaintiff can not prevail under any circumstances.

SO ORDERED.