OPINION OF THE COURT
John A. Milano, J.
ISSUE
Under certain circumstances, may a “singles only” provision in a residential lease violate the State Human Rights Law? (Executive Law, § 296, subd 5, par [a].)
FACTS
The basis for this holdover proceeding is that respondent tenant Amy Brodowsky has been living with respondent Robert D. Palmer without the benefit of marriage and in violation of her lease which provides that only she may occupy the premises. It is not controverted that the respondents are living together and that they are not married. Petitioner and tenant Brodowsky entered into a three-year lease commencing on April 1,1979. Paragraph 36 of a rider to said lease states: “Tenant represents that apartment will be occupied by one person only, namely Amy Brodowsky. Any additional occupants found in possession of this apartment will constitute a breach of this lease and will cause cancellation of said lease as described in paragraph #18 thereof.”
*89 ARGUMENTS
Petitioner argues that where a substantial obligation of a lease requires a tenant to reside alone in the rented apartment and the tenant allows another person to reside there too, the landlord on the basis of a vacancy decontrol may lawfully request a new lease to be executed by both parties with an appropriate stabilized vacancy rent increase and that upon tenant’s failure to do so, eviction proceedings may follow. Respondents? position is that the petition must be dismissed as it is based upon a violation of existing law and discrimination because of marital status and cite section 296 of the Executive Law. No reason is given in paragraph 36 (supra) or elsewhere in the lease for the “singles only” restriction nor does the landlord allege a violation of any overcrowding provision of the Administrative Code of the City of New York in relation to minimum livable space. (Administrative Code, § D26-33.03.)
THE LAW
Petitioner cites Irweis Holding Corp. v Glenn (2 Misc 2d 804 [App Term, 1st Dept]) and Equity Invs. v Paris (113 Misc 2d 681 [App Term, 2d Dept]) to sustain his argument that the court will uphold a provision in a lease defining the tenancy and who is to be excluded. But in both of these decided cases, the lease stated that the apartment was to be occupied by the tenant and the immediate family of the tenant. And in Equity Invs. (supra, p 681) the term “immediate family” was specifically defined as the “tenant, tenant’s unmarried children, and children yet unborn ‘and not otherwise’.” The Appellate Term stated (pp 681-682): “In view of this clear and unambiguous clause, it is clear that the occupancy by tenant’s parents violated the terms of the lease which must be accorded their plain meaning (see Martin v Glenzan Assoc., 75 AD2d 660). We are also of the opinion that the violation is substantial in nature (cf. Fraydun Enterprises v Ettinger, 91 Misc 2d 119; Mideast Holding Corp. v Tow, 60 Misc 2d 422).” But in the above cases cited, no marital discrimination was at issue and the leases in question did not provide for a “singles only” restriction. The parties involved were parents and a third cousin not held to be members of the immediate family.
*90 In Hudson View Props, v Weiss (106 Misc 2d 251, revd 109 Misc 2d 589, revd 86 AD2d 803), tenant, her former husband and their children, in January, 1967 moved into the rent-controlled apartment that she presently occupied under the terms of a lease signed by her former husband. The lease provided, in part, that “ The demised premises and any part thereof shall be occupied only by tenant and members of the immediate family of tenant’ ”. (106 Misc 2d, at p 252.) Tenant’s former husband moved out of the apartment in August, 1976. In December, 1979 a man with whom tenant “ha[d] a close and loving relationship” began sharing the apartment with tenant. (106 Misc 2d, at p 252.) The significant fact in this case was that the said party to whom objection was made by the landlord moved into the premises after the rental term had begun and the landlord had argued that section 296 of the Executive Law therefore had no applicability since there was no marital discrimination at the inception of the lease. The Appellate Division, First Department, rejected this argument holding that where discrimination takes place after the initial leasing, the proscriptions of section 296 are fully operative. The Hudson case has been followed and cited by various other courts. (Townhouse Assoc, v Hille, NYLJ, April 19, 1982, p 14, col 2 [App Term, 1st Dept]; Munroe v 344 East 76th Realty Corp., 113 Misc 2d 155; Brooklyn Hgts. Realty Co. v Gliwa, NYLJ, March 12, 1982, p 13, col 1 [App Term, 2d Dept].)
Petitioner maintains that he is not seeking to evict the tenants because of their marital status but is willing to permit them to remain provided they sign a lease and pay the appropriate vacancy rent increase which the tenant has refused to do. The issue is not whether the landlord petitioner wishes them to remain at an increase in rent but whether they can legally remain under the terms of the said lease of 1979 on a nonvacancy decontrol basis. Petitioner landlord may therefore prevail under the circumstances and facts herein stated, only if the “singles only” restriction does not violate the public policy of this State and city as expressed by section 296 (subd 5, par [a]) of the Executive Law (State Human Rights Law) and section Bl-7.0 (subd 5, par [a]) of the Administrative Code (City *91 Human Rights Law). Both of these laws proscribe discrimination in housing on the basis of marital status and both provide for a liberal construction of that provision. (Executive Law, § 300; Administrative Code, § Bl-11.0.)
This court holds that such “singles only” restriction is violative of the public policy of this State and city. It is quite apparent to this court that the arbitrary enforcement of a “singles only” restriction in said lease would, if respondent tenant Amy Brodowsky married or chose a life-style with a man without benefit of marriage, subsequent to the inception of the lease term, constitute marital discrimination.
But there is another ground upon which this court may deem the said restrictive provision to be unenforceable and that is on the basis of unconscionability.
It has long been the law that covenants seeking to limit the right to assign a lease are restraints which courts do not favor. In a similar vein, the law has developed the concept of unconscionability so as to prevent the unjust enforcement of onerous contractual terms which one party is able to impose upon the other because of a significant disparity in bargaining power. (Uniform Commercial Code, § 2-302; see Rowe v Great Atlantic & Pacific Tea Co., 46 NY2d 62; Riggs v Pursell, 66 NY 193, 201; Presby v Benjamin, 169 NY 377, 380; see, also, 1 Rasch, New York Landlord and Tenant, § 253.)
The apartment of the tenant respondents is protected by the Rent Stabilization Law and Code and a tenant may not waive any benefits expressed or implied. (Local Laws, 1969, No. 16 of City of New York; Code of Real Estate Industry Stabilization Association of New York City, Inc., § 11.) Without a rational or justifiable basis for the said restriction this court finds the proscription arbitrary and unconscionable as a matter of law in view of a vacancy rate in this county pertaining to residential units of under 2% and in view of the arbitrary exclusion of family members. In the way of obiter dictum, this court is not addressing itself to situations involving two or more cotenants specifically named in a lease in which case a different result might ensue. But in regard to a lease which restricts *92 occupancy of an apartment to only one named tenant, this court shall not enforce said restriction so as to prevent an unconscionable result. (Real Property Law, § 235-c.)
CONCLUSION
Accordingly, the petition is dismissed with prejudice. The landlord may request a renewal lease from the said respondents commencing April 1,1982 consistent with this decision and in accordance with rent stabilization guidelines and appropriate rent guidelines board increases. Pursuant to stipulated facts submitted herein court awards counsel fees to the said respondents in the sum of $350.