Arlene Belanoff et al., Respondents, v Barry Grayson
et al., Appellants.

First Department, January 12, 1984

APPEARANCES OF COUNSEL

*Michael D. Shulman* of counsel (*Braunstein, Jacobson, Freeman & Viscomi,* attorneys), for respondents.

*S. Andrew Schaffer* and *Terrance J. Nolan* for appellants.

Asch, J.

Plaintiff Arlene Belanoff was employed by defendant New York University Medical Center. She assisted defendant Grayson, a dentist at the center. On September 18, 1980, Ms. Belanoff received a probationary performance review from Grayson which rated her performance as "very good". In the summer of 1981, the office records and files which had been in Ms. Belanoff's charge, upon examination by an accountant, were reported to be in disarray. After review by Dr. Grayson, the accountant and plaintiff, she stated these problems would be avoided in the future. In August of 1981, Dr. Grayson advised Ms. Belanoff that he was seeking a raise and promotion for her. On November 11, 1981, he repeated this request for the raise to Robert Bochat, the administrator of the center.

Thus, prior to the fall of 1981, Dr. Grayson and Ms. Belanoff appeared to have had a cordial employer-employee relationship. At certain times, Dr. Grayson gave, as did other supervisors in the center to their confidential employees, gifts such as $100 gift certificates.

In mid-November of 1981, Ms. Belanoff informed Dr. Grayson that she was getting married and, according to her, this announcement led to a change in her relationship with him. It must be noted, however, that in her application for employment, Ms. Belanoff inserted the name of "Morton Belanoff — Fiancé" in the space provided for someone to be notified in the event of emergency.

On November 20, 1981, Dr. Grayson prepared a work evaluation of Ms. Belanoff which outlined various job performance deficiencies of Ms. Belanoff. She inquired about a transfer and Dr. Grayson advised her to seek one. On November 25, 1981, Ms. Belanoff was married. On December 3, 1981, a performance review of Ms. Belanoff submitted to the administration was favorable to her. (This review was apparently prepared in contemplation of a transfer.) Various transfer opportunities were offered to Ms. Belanoff but she rejected them as demotions or inconvenient to her with respect to hours of work.

On February 12, 1982, Grayson prepared another performance review of Ms. Belanoff. This review was quite

unfavorable. Ms. Belanoff replied to these criticisms in a letter dated February 19, 1982. That letter was sent to Dr. Grayson and his supervisors. By letter dated February 24, 1982, Ms. Belanoff designated her February 19 letter as the first stage of a grievance. She requested that Dr. Grayson's February 12 review be removed from her file. Her request was denied by Grayson by letter dated March 3, 1982.

On March 3, 1982, Ms. Belanoff wrote to the center's administrator, Mr. Bochat, requesting that the February 12, 1982 letter be removed from her file. Her request was denied. The grievance was not pursued to the third stage.

On March 24, 1982, Ms. Belanoff commenced this action by serving a summons upon Dr. Grayson and the center. The complaint was served on May 6, 1982.

On April 8, 1982, Dr. Grayson spoke to Ms. Belanoff, criticizing her work performance. Ms. Belanoff became very upset and left the office. She went to Mr. Bochat to voice her objections. On the evening of April 8, 1982, Ms. Belanoff received a telegram from Mr. Bochat suspending her from work.

The next week, Ms. Belanoff sought medical attention because of her mental distress and of physical illness, as well. She advised the center that she was seeking medical attention. On April 20, 1982, Ms. Belanoff's physician advised her that she would have to change to a less stressful job situation in order to regain her health. The physician advised the center of this recommendation. On May 3, 1982, Ms. Belanoff received a letter from Dr. Grayson advising her that her employment had been terminated.

The complaint in this action contains four causes of action. The first cause of action alleges that Ms. Belanoff had been discriminated against by reason of her sex and marital status, in violation of section 296 (subd 1, par [a]) of the Executive Law. The second cause of action alleges that Ms. Belanoff had been retaliated against for opposing an unlawful practice, in violation of section 296 (subd 1, par [e]) of the Executive Law. The third cause of action alleges that the defendants had intentionally inflicted

emotional distress on Ms. Belanoff. The fourth cause of action alleges loss of consortium by Mr. Belanoff.

On December 1, 1982, the defendants moved for summary judgment dismissing the complaint. Special Term held that there were issues of fact which precluded any grant of summary judgment and accordingly denied defendants' motion. This was error solely as to the third and fourth causes of action.

The plaintiffs' first cause of action alleges that the defendants discriminated against Arlene Belanoff by reason of her sex and marital status in violation of section 296 *et seq.* of the Executive Law.

One alleging discriminatory practices has the burden of establishing a prima facie case. If such a showing is made, the employer must show that the adverse action which it took against the employee was for an independent, legitimate reason, and not a pretext (*Burlington Inds. v New York City Human Rights Comm.*, 82 AD2d 415).

The defendants' position is that they had a nonpretextual reason for their action against Ms. Belanoff, to wit: her poor work performance. They argue that Dr. Grayson was aware from the beginning that Ms. Belanoff was engaged (her fiancé's name appeared on her application form) and hence did not change his attitude when she announced her imminent marriage in November of 1981. The defendants point to the fact that no allegations of sexual advances by Dr. Grayson were made.

The plaintiffs claim a marked change of atmosphere after Ms. Belanoff's announcement of her November 25, 1981 marriage. They also point to the various gifts given to Ms. Belanoff by Dr. Grayson prior to that time and to his invitations to her to accompany him to various social events. The plaintiffs note the very favorable evaluations of Ms. Belanoff made by Dr. Grayson prior to November of 1981. They argue that the files had been in disarray because of the filing system utilized and not because of any failures on the part of Ms. Belanoff.

Discrimination may be devious and subtle (*State Div. of Human Rights v Kilian Mfg. Corp.*, 35 NY2d 201, 209). The burden of demonstrating that unusual treatment of an

employee was warranted is on the employer (*Board of Educ. v New York State Div. of Human Rights,* 42 AD2d 49, affd 35 NY2d 673).

■ Special Term was correct in determining that there were issues of fact in regard to Dr. Grayson's treatment of Ms. Belanoff and in denying summary judgment on the first cause of action as against Dr. Grayson.

In addition, Mr. Bochat denied plaintiff's grievance and suspended her. Plaintiff's employment was later terminated by Dr. Grayson with the obvious acquiescence of the center. Thus, there was an issue of fact as to whether defendant center had knowledge of or acquiesced in any alleged discriminatory conduct (cf. *Matter of State Univ. of N. Y. v State Human Rights Appeal Bd.,* 81 AD2d 688, affd 55 NY2d 896). Special Term was therefore correct in denying summary judgment on the first cause of action as to the center.

The second cause of action alleged that defendants retaliated against Ms. Belanoff in violation of section 296 (subd 1, par [e]) of the Executive Law. As noted above, the summons in this action was served on March 24, 1982. Ms. Belanoff was suspended on April 8, 1982 by the administrator of the center and her termination occurred on May 3, 1982. Since Special Term correctly decided there was an issue of fact as to whether defendants discriminated against Ms. Belanoff as to the first cause of action, there is no need for us to decide at this time whether plaintiff has a cause of action for retaliatory discrimination without any finding of the actual sex discrimination alleged (see *Matter of Mohawk Finishing Prods. v State Div. of Human Rights,* 57 NY2d 892, affg 83 AD2d 970).

■ The third cause of action alleges intentional infliction of emotional distress. The law does not provide a remedy against all activity which an individual may find annoying, but where severe mental anguish is inflicted through a deliberate and malicious campaign of harassment, a remedy is available (see *Nader v General Motors Corp.,* 25 NY2d 560, 569). The conduct complained of must exceed all bounds usually tolerated by society (*Fischer v Maloney,* 43 NY2d 553, 557) and the misconduct must be of the most egregious nature (*Murphy v American Home Prods. Corp.,*

58 NY2d 293). Though issues as to the intentional infliction of emotional distress were alleged, the standard set by the above cited cases was not met.

In addition, subdivision 6 of section 29 of the Workers' Compensation Law provides: "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ." Thus, the third cause of action should have been dismissed as against both defendants.

The fourth cause of action is asserted by Mr. Belanoff for loss of consortium. Such a cause of action is derivative (*Liff v Schildkrout,* 49 NY2d 622, 632). The spouse of an employee alleging discrimination under the Executive Law is not a "person aggrieved" within the meaning of the statute and a cause of action for loss of consortium cannot be stated under the Executive Law (*Hart v Sullivan,* 84 AD2d 865, affd 55 NY2d 1011). Since the plaintiffs have failed to state a cause of action for intentional infliction of emotional distress, there can be no derivative action for loss of consortium and the fourth cause of action should also have been dismissed by Special Term.

Accordingly, the order of the Supreme Court, New York County (ASCIONE, J.), entered May 17, 1983, which denied defendants' motion for summary judgment dismissing plaintiffs' complaint, should be modified, on the law, the motion by defendants granted to the extent of dismissing the third and fourth causes of action of the complaint, and otherwise affirmed without costs.

SULLIVAN, J. P., BLOOM, FEIN and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on May 17, 1983, unanimously modified, on the law, the motion by defendants-appellants for summary judgment granted to the extent of dismissing the third and fourth causes of action of the complaint, and otherwise affirmed, without costs and without disbursements.