OPINION OF THE COURT
Edward H. Lehner, J.
On May 8, 1981 Mrs. Fatima Delosovic was walking her three children across Seventh Avenue where it intersects with Greenwich Avenue and Eleventh Street. Her 3-month-old son Rizo was in a carriage and her sons Vaid (5 years old) and Blerini (2 years old) were holding onto the carriage. While crossing she and her children were struck by a 14-wheel tractor trailer owned by defendant Higgins Trucking Company (Higgins) and driven by defendant Stephen J. Rapczak. Vaid and Blerini were killed as a result of being crushed by the wheels of the truck. Although the carriage was dragged several feet under the front bumper of the truck, miraculously Rizo was only slightly injured.
The defendants, in addition to Higgins and Rapczak, were International Harvester Company (Harvester), the manufacturer of the truck, and the City of New York.
The claim against Harvester was that the truck, manufactured in 1973, was improperly designed in that it had "blind spots” so that a driver could not see certain areas in front, and that the Delosovics were struck as a result of the driver not seeing them when they were in such an area.
The claim against the city is that the design of the "Walk” —"Don’t Walk” signals at this intersection did not allow sufficient time after the last "Walk” signal flashed to allow a person proceeding at an average rate of speed to cross Seventh Avenue before the light flashed green for vehicular traffic to proceed.
THE JURY VERDICT
After a trial, which was at times highly charged with emotion, the jury rendered a verdict in favor of plaintiffs totaling $25,000,000, the components of which were as follows: $9,500,000 *803 to Fatima Delosovic for emotional distress; $5,000,000 for wrongful death of Vaid Delosovic; $5,000,000 for wrongful death of Blerini Delosovic; $5,000,000 to Ismet Delosovic for loss of services and society; $250,000 for conscious pain and suffering of Vaid Delosovic; $250,000 for conscious pain and suffering of Blerini Delosovic.
The jury determined that Mrs. Delosovic was not entitled to an additional recovery for any physical injuries as she did not meet the threshold under the No-Fault Law. (Insurance Law § 5104.) Specifically it was found that she did not "sustain a significant limitation of use of a body function or system”, nor "a consequential limitation of use of a body organ or member” as a result of the accident. The claim of Rizo was dismissed by me for failure to prove a prima facie case of a "serious injury” under no-fault.
Although defendants argued that Mrs. Delosovic was negligent in seeking to cross Seventh Avenue without observing whether the "Walk” signal was still on before she left the curb, the jury attributed no negligence to her. Fault was apportioned as follows:
Higgins and Rapczak 44%
Harvester 28%
City of New York 28%
In making the foregoing awards the jury made the following separate findings of fact: (1) the design of the subject crosswalk was defective; (2) the defective design was a proximate cause of the accident; (3) the city did not exercise due care in designing the crosswalk; (4) it was not reasonable for the city to adopt the design of the crosswalk; (5) on the date of the accident the signals at the crosswalk were not operating in the manner designed by the city; (6) the city was negligent in permitting the signals to operate in the manner they were operating on the date of the accident; (7) the truck was defectively designed by Harvester; and (8) the defective design of the truck was a proximate cause of the accident.
SETTLEMENTS
During the course of the trial plaintiffs settled their claims against Higgins and Rapczak for $500,000 (the amount of the insurance policy covering said defendants), with $350,000 allocated to Fatima Delosovic, $50,000 to Ismet Delosovic, and $50,000 each for the wrongful deaths of Vaid and Blerini.
Subsequent to the verdict, plaintiffs settled with Harvester *804 for $750,000, with $600,000 allocated to Fatima Delosovic and $150,000 to Ismet Delosovic.
Thus, the only motion now before the court to set aside the verdict is on behalf of the city.
THE DESIGN OF THE "WALK” — "DON’T WALK” SIGNALS
The testimony showed that the length of the subject crosswalk was 70 feet and that engineering standards estimate that the average speed a person walks is four feet per second. There was proof from a traffic safety engineer that if a person left the curb at the last second of the "Walk” signal, there was insufficient time for the individual walking at that rate of speed to reach the opposite side of Seventh Avenue before the signal turned green for vehicular traffic to proceed.
Here the Higgins truck had stopped for a red light at the intersection, with a portion of the right side in the crosswalk. Mrs. Delosovic testified that when she reached the corner of the westerly side of Seventh Avenue and the northerly side of Greenwich Avenue, the "Don’t Walk” sign was flashing. When the light changed and the "Walk” signal appeared, she wiped the faces of her children, put papers in a waste basket, and proceeded north approximately 10 feet where there was a curb cut for the carriage, and then stepped into the crosswalk. As she reached the lane just west of where the Higgins truck had stopped, the light for vehicular traffic changed and Mrs. Delosovic, after waving in an effort to seek the attention of Rapczak, quickened her pace in an attempt to get around the truck. However, Rapczak did not see her and tragedy ensued.
Mrs. Delosovic conceded that she did not see the "Walk”— "Don’t Walk” signal when she stepped off the curb, her view being blocked by the truck. However, a witness with expertise in traffic safety opined, by reconstructing Mrs. Delosovic’s movements after the "Walk” signal first flashed, that she had in fact left the curb when the "Walk” signal was still on.
The evidence showed that the last change in the timing of the lights in the crosswalk occurred in 1969, and that there was no reported pedestrian accident in the crosswalk since that date. Further, there was no evidence of any prior complaints about the traffic signals, although witnesses asserted that conditions were chaotic because of the construction work at St. Vincent’s Hospital on the east side of Seventh Avenue which caused the closure of two lanes of traffic and created a great deal of noise.
*805 Notwithstanding the fact that no case has been found discussing governmental liability relating to “Walk” — “Don’t Walk” signals, and although such signals do not exist at all intersections where there are traffic lights, I find that once these signals are installed there is a duty to pedestrians to see that they perform in a proper manner to inform pedestrians when it is appropriate to proceed, and there may be governmental liability to a person injured by a vehicle if the timing is such that there is an inadequate period provided at any time the "Walk” signal appears for a person, proceeding at an average rate of speed, to complete the crossing before vehicular traffic is authorized to proceed.
Here, despite the fact that there was no evidence that a pedestrian accident had occurred at this busy crosswalk in the period of over a decade from the time the signals were last altered, the expert testimony, showing that there was inadequate time for a person leaving the curb at the last flash of the “Walk” signal, and walking at an average rate of speed, to complete the crossing before the traffic signal turned green for vehicular traffic, sufficed to sustain the jury conclusion that the timing design of the "Walk” — "Don’t Walk” signals lacked a reasonable basis.
Of course, proximate cause always has to be established. Here the jury was within its province in finding that the defective timing of the signals was one of the causes of the resulting deaths on the theory that Mrs. Delosovic was placed in a dangerous position because of reliance that there was sufficient time to cross if she left the curb at any time the “Walk” signal was lit.
A strong argument is presented that in view of Mrs. Delosovic’s experience in crossing at this intersection, she was familiar with the timing and therefore should not have left the curb when she did. However, the court cannot conclude, as is required to set aside a verdict for insufficient evidence, that there is “no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial.” (Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978].) Therefore, the court declines to set aside the verdict of liability of the city, or the finding that Mrs. Delosovic was not negligent.
EMOTIONAL DISTRESS INJURY
It is argued that the charge relating to emotional distress *806 did not properly distinguish between distress resulting from witnessing the accident, which is compensable under Bovsun v Sanperi (61 NY2d 219 [1984]), and that related to normal grief occasioned by the death of a loved one, which is not compensable. (See, Kugel v Mid-Westchester Indus. Park, 127 AD2d 632 [2d Dept 1987].) Further, defendants assert that a Bovsun claim for emotional distress cannot be upheld unless the claimant has sustained a "serious injury”, as defined in the No-Fault Law, and since the jury found that Mrs. Delosovic did not sustain such an injury, her emotional injury claim must be dismissed.

The Effect of No-Fault

Insurance Law § 5104 (a) provides that no action to recover "non-economic loss” by a "covered person * * * for personal injuries arising out of negligence in the use or operation of a motor vehicle” may be maintained "except in the case of serious injury”. In defining "serious injury”, section 5102 (d) lists, in the disjunctive, a series of disabilities, all of which specifically relate to physical conditions except the last which is "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”
Prior to the adoption in 1977 (L 1977, ch 892) of the current verbal threshold definition of "serious injury”, the definition as originally adopted in 1973 (L 1973, ch 13) listed several physical conditions, with an alternate means of satisfying the threshold being if the "charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services” exceeded $500. It is noted that although basic economic loss has always included expenses incurred for all of the foregoing, it has also always included psychiatric expenses, but such expenses were not mentioned in calculating the $500 threshold.
The novel question thus presented is whether a person who sustains only mental injuries in a "zone-of-danger” situation is subject to the No-Fault Law.
The only case that I found on this issue is Tarolli v Rossotti (141 Misc 2d 107 [Sup Ct, Onondaga County 1988]). There plaintiff wife, who sustained only minor physical injuries, *807 sought to recover for psychic injuries resulting from the contemporaneous observation of serious physical injuries to her spouse. The court dismissed the claim, ruling that "to allow the recovery * * * without showing a 'serious injury’ * * * would defeat the purpose of the no-fault statute”. (Supra, at 110.) I disagree with such conclusion.
At the time of adoption of the No-Fault Law in 1973, the governing authority relating to recovery for emotional injuries resulting from witnessing an accident was Tobin v Grossman (24 NY2d 609 [1969]). There a mother heard the screech of automobile brakes and immediately went to the scene and saw her child lying on the ground. Her complaint to recover for emotional injuries was dismissed, the court stating (supra, at 611): "It is concluded that under the well-established applicable doctrines no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries”.
This position was altered in the 1984 decision in Bovsun v Sanperi (supra), where a four-Judge majority, in adopting the "zone-of-danger” rule, stated (supra, at 223-224): "Where a defendant’s conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant’s conduct on a member of the plaintiff’s immediate family in his or her presence, the plaintiff may recover damages for such injuries.”
In the two cases consolidated in the Bovsun appeal, the plaintiffs were wives seeking to recover for emotional distress resulting from observing serious physical injuries to their husbands. While in both cases the vehicle that struck the husband had impact with the wife, the court (supra, at 231, n 9) specifically declined to require impact as a prerequisite, noting that in Battalla v State of New York (10 NY2d 237 [1961]) it "abolished the impact requirement in negligent infliction of emotional distress cases.”
In Bovsun (supra, at 231) the court made no reference to the No-Fault Law, but stated: "We are not suggesting that any trifling distress would be sufficient to support recovery of damages under the zone-of-danger rule. Rather, the emotional *808 disturbance suffered must be serious and verifiable (see Restatement, Torts 2d, § 436, subd [3], Comment g).”
In concluding as it did, the court recognized that its decision "may be perceived as overruling, or at least as rejecting in a significant respect, the rationale on which our decision in Tobin was predicated”, but concluded: "We are not today creating a new cause of action which has not heretofore existed under the tort law of New York; rather we are recognizing the right of a plaintiff to whom the defendant has owed but breached a duty of reasonable care (as determined under traditional tort principles) to recover as an element of his or her damages, those damages attributable to emotional distress caused by contemporaneous observation of injury or death of a member of the immediate family caused by the same conduct of the defendant.” (Supra, at 232-233.)
Notwithstanding the court’s statement that it was not "creating a new cause of action”, the relief it authorized was not recognized at the time of the enactment of no-fault in 1973, or when the verbal threshold was adopted in 1977. While a person claiming mental distress emanating from his or her own physical injuries sustained in a motor vehicle accident would have to satisfy the "serious injury” prerequisite to recover for the emotional injuries (Poblet v Parisi, 130 Misc 2d 521 [Sup Ct, Queens County 1985]), a zone-of-danger plaintiff is in a different position.
If Mrs. Delosovic had not been struck by the truck, but was in the "zone of danger” of being hit, she would not be a "covered person” prohibited by Insurance Law § 5104 from suing for noneconomic loss unless the threshold was met. Section 5102 (j) defines "covered person” as "any pedestrian injured through the use or operation of * * * a motor vehicle”. Although in such circumstances plaintiff’s emotional injuries would have resulted from the "operation of a motor vehicle”, I find that the statute intended physical injury, a nonstruck plaintiff not having a recognized claim until Bovsun (supra). See, Smith v Chubb & Son (139 AD2d 897, 898-899 [4th Dept 1988]) where the court, upholding a Master Arbitrator’s finding that a zone-of-danger claimant asserting only mental injuries was not entitled to no-fault first-party benefits, stated: "It was not irrational for the Master Arbitrator to conclude that, in order to be entitled to no-fault benefits, the claimant must have personally suffered a bodily injury as a result of the use or operation of an insured motor vehicle, i.e., a 'contact’ injury. The Master Arbitrator’s determination is *809 buttressed by the fact that the no-fault scheme * * * predates the relatively recent recognition in this State of a 'zone of danger’ claimant’s right to recover for psychic injuries (see, Bovsun v Sanperi, supra)”.
With this conclusion in mind, it would be illogical to find that Mrs. Delosovic, who would be a "covered person” because she was struck by the truck, would be subject to the threshold requirement. Since the injuries in dispute relate to the witnessing of a tragedy, the ability to recover for emotional injuries should not turn on whether or not there was impact, and a person who was struck should not be in a worse position than one who was not hit.
Moreover, the No-Fault Law "is in derogation of the common-law right to sue for tort damages and 'it is to be strictly construed to avoid abrogating the common law beyond the clear impact of the statutory language * * * and is to be read narrowly’ ” (Shiner v Insetta, 137 Misc 2d 1012, 1014 [App Term, 2d Dept 1987]; see also, Maxwell v State Farm Mut. Auto. Ins. Co., 92 AD2d 1049 [3d Dept 1983]; Katzman v Derouin, 109 AD2d 1086 [4th Dept 1985]).
Accordingly, the failure of Mrs. Delosovic to prove a "serious injury” under the No-Fault Law does not preclude her from recovering for her "zone-of-danger” emotional distress injuries.

Compensable Emotional Distress

In my jury charge I stated that Mrs. Delosovic was seeking to recover for the pain and suffering resulting from her physical injury "and also for emotional stress for having witnessed the death of her children by being run over by the truck”. I went on to state that "plaintiff claims that she sustained such stress as a result of witnessing the deaths of her children by being run over by the Higgins truck” and that "if you find that she sustained such stress, you should insert in Question 18 the full amount of damages sustained by her for mental suffering, including emotional and neurological disturbances resulting therefrom”. In discussing the claims for wrongful death I charged that these claims relate to pecuniary injury only and in connection therewith the jury "may not consider or make any award for sorrow, mental anguish or injury to feeling or loss of companionship”, and should "not consider emotional distress or anguish” on the death claims, and that "the emotional distress of Mrs. Delosovic for viewing the accident may be compensated * * * in Question 18”. *810 While I stated the foregoing with respect to the claim for emotional distress, question 18 asks the jury to determine "the full dollar amount of damages sustained by Fatima Delosovic for the infliction of emotional distress”, not specifically limiting the amount to distress resulting from witnessing the accident. However, there was no objection to the wording of the question, and since I believe the charge was proper, I find no prejudice.
In the medical testimony describing Mrs. Delosovic’s mental injuries, there was no differentiation between conditions that ensued from observing the tragedy and those that were a consequence of the grief resulting from the deaths. Although I question whether the science of psychiatry has reached a stage where such a differentiation is possible, the jury, having been instructed that the compensable injury was that which was a consequence of witnessing the accident, had sufficient evidence before it to render an award for compensable emotional injuries.
LOSS OF CONSORTIUM
Defendants argued that there can be no allowable loss of consortium claim to the spouse of a plaintiff who suffers only emotional distress in a "zone-of-danger” situation.
In Millington v Southeastern Elevator Co. (22 NY2d 498, 502, 504 [1968]) Judge Keating, in an opinion overturning prior decisional law that had disallowed a loss of consortium claim to a wife, wrote:
"The concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more. * * *
"Thus the 'consortium’ interest to be protected here does not rest on any medieval theory but on the real injury done to the marital relationship.” In Groat v Town Bd. (100 Misc 2d 326, 330 [Sup Ct, Schenectady County 1979]), an action for malicious prosecution and prima facie tort, the court dismissed a consortium claim noting that "there appears to be no authority for permitting [such claim] where the harm complained of did not result in physical injury to the spouse or physical confinement away from the spouse.” This rule was followed by Judge Weinfeld in Tedeschi v Smith Barney, Harris Upham & Co. (548 F Supp 1172, 1177 [SD NY 1982]). I disagree with such conclusion.
In Garrison v Sun Print. & Publ. Assn. (207 NY 1 [1912]), *811 where the wife had a claim for mental distress caused by the publication of defendant’s libel, the court allowed her husband to maintain a claim for loss of consortium. This rule has been followed in this jurisdiction in several recent defamation cases. (See, Dazzo v Meyers, 83 AD2d 14, 21 [2d Dept 1981]; Talbot v Johnson Newspaper Corp., 124 AD2d 284, 286 [3d Dept 1986]; Privitera v Town of Phelps, 79 AD2d 1, 6 [4th Dept 1981].)
Several cases outside the libel area, while not specifically passing upon the propriety of consortium claims in the absence of physical injury, suggest a conclusion contrary to that reached in Groat v Town Bd. (supra). In Shearer v Mooney (109 AD2d 1104 [4th Dept 1985]) the court, in ruling that it was improper in a legal malpractice action, where no physical or mental injury was asserted, to allow the complaint to be amended to add a cause of action for "loss of consortium” stated that "[a] cause of action for loss of services and society of a spouse is predicated upon physical or mental injury or incapacity of that spouse”. (Emphasis supplied.) Also, in Belanoff v Grayson (98 AD2d 353, 358 [1st Dept 1984]) it was said that "[sjince the plaintiffs have failed to state a cause of action for intentional infliction of emotional distress, there can be no derivative action for loss of consortium”, thus implying that if there were a valid cause of action for emotional distress, a consortium claim would lie.
Differing results have been reached in other jurisdictions. In Agis v Howard Johnson Co. (371 Mass 140, 146, 355 NE2d 315, 320 [1976]), an action seeking recovery for intentional infliction of emotional distress, the court held that the consortium claim was viable, concluding that: "the underlying purpose of such [an] action is to compensate for the loss of the companionship, affection and sexual enjoyment of one’s spouse, and it is clear that these can be lost as a result of psychological or emotional injury as well as from actual physical harm. Cf. Garrison v. Sun Printing & Publishing Ass’n, 207 N.Y. 1, 10 (1912).” (Accord, Gates v Richardson, 719 P2d 193, 201 [Wyo 1986]; Habelow v Travelers Ins. Co., 389 So 2d 218, 220 [Fla App 1980].) In Molien v Kaiser Found. Hosps. (27 Cal 3d 916, 932, n 3, 616 P2d 813, 822, n 3 [1980]), the court, after noting "a paucity of authority from other jurisdictions” on this issue, permitted a consortium claim predicated upon negligently inflicted emotional distress. (See also, Paugh v Hanks, 6 Ohio St 3d 72, 451 NE2d 759, 767 [1983] [emotional distress negli *812 gently inflicted upon a bystander] [cited in Bovsun v Sanperi, supra, at 227, n 4].)
A contrary view was expressed in Collins v Gulf Oil Corp. (605 F Supp 1519, 1524 [Conn 1985]), which noted the Restatement (Second) of Torts § 693 requirement of " 'bodily harm’ ” for a consortium claim and held that , such language necessitates physical harm in order for such a claim to lie. (See also, Slovensky v Birmingham News Co., 358 So 2d 474, 477 [Ala Civ App 1978].)
I believe that the correct position is that expressed in Agis v Howard Johnson Co. (supra), and that there is no valid reason to require physical harm as a prerequisite to a consortium claim. Nor should there be any difference whether the mental harm resulted from an intentional act or from a negligent one, as no such distinction affects the viability of a consortium claim predicated on a physical injury.
A "zone-of-danger” injury to a person’s emotions is a violation of an independent duty of reasonable care owed to that person and a spouse is therefore entitled to pursue a consortium claim.
CONSCIOUS PAIN AND SUFFERING
Although there was no witness who observed that Vaid or Blerini regained consciousness after being struck, a physician testified that because of certain blood circulation, it was his opinion that there was a very short period (a "flash”) of consciousness between the time the children were struck by the truck and when they were crushed by its wheels.
To recover for conscious pain and suffering, there must be "some level of * * * awareness”. (McDougald v Garber, 73 NY2d 246, 251.) In Bruck v Meatto Trucking Corp. (20 AD2d 521, 522 [1st Dept 1963]) it was ruled that "[s]ince decedent * * * did not regain consciousness, no recovery for pain and suffering may be allowed.” In Whalen v Daugherty (30 AD2d 604, 605 [3d Dept 1968], lv denied 22 NY2d 647), the court affirmed a jury’s denial of damages for pain and suffering, stating that "while there is some evidence that decedent was conscious after the accident, there is none that he was enduring pain or suffering”. In Huertas v State of New York (84 AD2d 650, 651 [3d Dept 1981]), a claim for pain and suffering was rejected as being "speculative”. (See also, Fiederlein v New York City Health & Hosps. Corp., 56 NY2d 573 [1982]; *813 Alfieri v Cabot Corp., 17 AD2d 455 [1st Dept 1962], affd 13 NY2d 1027; Anderson v Rowe, 73 AD2d 1030 [4th Dept 1980].)
Here any claim of pain and suffering in the flash between contact and loss of consciousness through crushing by the wheels was speculative and cannot be sustained. Accordingly, the jury verdicts in favor of the deceased children for such damages are vacated, and the causes of action therefor are dismissed.
DAMAGES
On the general issue of damages, Harvester argued (prior to settling with plaintiffs) that the grossly excessive amount of the verdict would cause a majority of our Appellate Division to agree with the two dissenting Justices in Walker v New York City Tr. Auth. (130 AD2d 442, 448 [1st Dept 1987], appeal dismissed 70 NY2d 797 [1987]) who found that the "excessiveness * * * was but a symptom of the jury’s evident unwillingness to conform its verdict to the evidence or abide by the court’s charge”, and would have directed a new trial. However, the majority said on this issue: "there is no legal authority for the novel proposition that a jury determination as to liability should be vacated, even where amply supported by the evidence, simply because of the excessiveness of the monetary amount of the award”. (Supra, at 443.)
Even though the awards here were grossly excessive, this does not mean that the jury did not otherwise fairly assess the evidence on liability. Hence, I decline to vacate the verdict on this ground.

Wrongful Death

EPTL 5-4.3 (a) limits damages awardable upon a cause of action for wrongful death to those which are "fair and just compensation for the pecuniary injuries resulting from the decedent’s death to the persons for whose benefit the action is brought.” Also recoverable pursuant to that section are "the reasonable funeral expenses of the decedent paid by the distributees”.
While much criticized, the limitation to pecuniary injuries has been the law in this State since 1847, and with that as the rule, recovery may not be had for "grief, and loss of society, affection and conjugal fellowship”. (Liff v Schildkrout, 49 NY2d 622, 633 [1980].)
In the case at bar no evidence was presented that in any *814 way would establish pecuniary injury from the deaths of the young children. When confronted with such a situation in Parilis v Feinstein (49 NY2d 984, 985 [1980]), the Court of Appeals said: "But in any wrongful death action, especially one involving a child of tender years, the absence of dollars and cents proof of pecuniary loss does not relegate the distributees to recovery of nominal damages only * * *. Rather, since it is often impossible to furnish direct evidence of pecuniary injury, calculation of pecuniary loss is a matter resting squarely within the province of the jury.” In that case the court determined that the proof regarding the character and condition of the 12-year-old decedent and the circumstances of his distributees warranted a $50,000 award.
In Frohlick v Columbia Wrecking Corp. (NYLJ, Feb. 9, 1984, at 12, col 3 [Sup Ct, Bronx County], revel solely to add interest and costs 112 AD2d 103 [1st Dept 1985]), former State Administrative Judge Rosenblatt analyzed 14 appellate decisions involving wrongful deaths of children under 10 years of age and found no verdict sustained in excess of $40,000. In that case, which involved the death of a seven year old, Justice Rosenblatt reduced a $250,000 verdict to $60,000.
Subsequently in Cassar v Central Hudson Gas & Elec. Corp. (134 AD2d 672 [3d Dept 1987]) an award of $100,000 for the wrongful death of a 10 year old was sustained. In Regan v Long Is. R. R. Co. (128 AD2d 511 [2d Dept 1987]), a verdict for the wrongful death of a 15 year old was reduced to $100,000.
Generally the younger the decedent the lower the amount that is upheld. Although I have found no case where an award for the death of a child of the ages involved here (2 and 5) has reached $100,000, I believe that in light of recent inflation, a verdict in that sum for each child is sustainable.

Loss of Consortium

Mr. Delosovic testified that after the accident most of the household chores were done by friends and relatives. It is noted that the Delosovics had two children after the death of Vaid and Blerini. I find that any award above $200,000 for loss of consortium would be excessive.

Mental Distress

The most difficult aspect of the motion before me is the amount of damages that may be upheld for the mother who witnessed the violent deaths of two of her children, bearing in *815 mind that the normal grief associated with their death is not compensable.
It has been stated that damages for "injuries suffered from fright is subject to the ordinary rule that the amount awarded must be fair and reasonable and sufficient to compensate for the said injuries” (Battalla v State of New York, 26 AD2d 203, 207-208 [3d Dept 1966], affd 24 NY2d 980 [1969], supra).
Unfortunately there is little guidance I was able to give the jury on this issue other than that the award be fair and reasonable, and there is little guidance available from reported decisions as to a sustainable sum. Under the circumstances, I find that to the extent the award exceeds $2,500,000 it is excessive.
SUMMARY
The motion to set aside the verdict is denied except: (i) the branch of the motion to vacate the awards for conscious pain and suffering of Vaid and Blerini is granted, and the causes of action therefor are dismissed; and (ii) awards in excess of the following amounts are excessive and a new trial is ordered solely on the issue of damages unless the respective plaintiffs stipulate in writing, within 30 days from service of a copy of this order, to reduce the amounts of the verdict to the following sums: Fatima Delosovic, for emotional distress — $2,500,000; Ismet Delosovic, for loss of consortium — $200,000; Ismet Delosovic, as administrator of the estate of Vaid Delosovic, for wrongful death — $100,000; Ismet Delosovic, as administrator of the estate of Blerini Delosovic for wrongful death — $100,000.
If plaintiffs so stipulate, they shall thereupon settle an order providing for entry of judgment against the City of New York giving effect to General Obligations Law § 15-108.