**Sandra ROVIRA, individually and as executor of the Estate of Marjorie Forlini, Frank Morales and Alfred Morales, Plaintiffs,**

v.

**AT & T, Defendant.**

**No. 90 Civ. 5486 (RPP).**

United States District Court, S.D. New York.

March 29, 1991.

Beldock, Levine & Hoffman, by Lee F. Bantle, Lambda Legal Defense & Educ.

Fund, Paula Ettelbrick, New York City, for plaintiffs.

Townley & Updike, by Daniel Rizzi, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant AT & T moves pursuant to Rules 12(b) and (c) of the Federal Rules of Civil Procedure to dismiss the local law, state law and common law claims in Counts IV, V and VI of the complaint, which allege discrimination on the basis of sexual orientation and marital status and breach of contract, on the grounds that those claims are preempted by ERISA and that plaintiffs lack standing to assert them. This Court is asserted to have jurisdiction over the local, state and common law causes of action in that they are pendent to the first three causes of action which are brought under a federal statute, the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001 *et seq.*

For the reasons stated below, the motion to dismiss Claims IV, V and VI on the ground of ERISA preemption is denied, but the Court declines to exercise pendent jurisdiction over them and those claims are dismissed without prejudice to their being the subject of an action in state court.

## BACKGROUND

Plaintiff Sandra Rovira ("Rovira") was the gay life partner of Marjorie Forlini, who died of cancer in 1988. Plaintiffs Frank and Alfred Morales are Rovira's children from a prior marriage and are alleged to have lived with Rovira and Forlini for ten of the twelve years the two women lived together. At the time of Forlini's death they were, respectively, 22 and 19 years of age. Forlini was an AT & T sales manager, covered under AT & T's Management Pension Plan, which provides for a Sickness Death Benefit to the qualified beneficiaries of eligible employees. The complaint states that each of the plaintiffs

was "one of Forlini's beneficiaries under the AT & T Management Pension Plan," and seeks sickness death benefits on that basis. Complaint, ¶¶ 4–6.[1]

Rovira inquired about and applied for benefits after Forlini's death on September 19, 1988, alleging that she and her children stood in the position of spouse and dependent children of Forlini. AT & T's benefits department denied the claim orally and plaintiffs appealed the denial to the AT & T Benefit Committee. The Benefit Committee affirmed the denial of plaintiffs' claim by letter of July 26, 1989. Rovira further appealed the denial of benefits to the AT & T Employees' Benefits Committee, which by letter of January 17, 1990, denied the claim, allegedly stating that Rovira did not qualify as a plan beneficiary because her relationship with Forlini did not constitute a valid marriage under New York law and Frank and Alfred Morales did not qualify because they were not the natural or adopted children of Forlini or her legal spouse. Plaintiffs also allege that the same letter stated that AT & T benefits were "administered uniformly to all employees without discrimination on the basis of age, race, color, religion, mental or physical handicap, national origin, sex, sexual preference or orientation." Complaint, ¶ 36. The complaint includes allegations of hostile, offensive and degrading treatment Rovira received at the hands of AT & T's benefits department employees when she inquired about any benefits for herself and her children as Forlini's family, and the refusal of the benefits department employees to respond to her requests for information in spite of her telling them she was also the executor of Forlini's estate.

## DISCUSSION

■ On a Rule 12 motion, the pleadings must be read liberally, and the court "must accept all of the plaintiffs' allegations as true and draw all inferences in their favor." *In re United States Catholic Conference,* 885 F.2d 1020 (2nd Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1946,

---

**1.** The AT & T Management Pension Plan is a self-administered employee benefit plan of

which AT & T, through its benefits department, is the administrator.

109 L.Ed.2d 309 (1990). *See also, Lujan v. National Wildlife Federation,* —— U.S. ——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). In deciding whether a plaintiff has standing to sue, a court must determine whether the pleadings sufficiently allege that the plaintiff has suffered or will suffer the type of actual injury which can be fairly traced to the challenged action and may be redressed by a court decision, and that the plaintiff's claims "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge Christian College v. Americans United For Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Ass'n of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)).

Count IV claims a violation of the New York City Human Rights Law, in that AT & T is alleged to have discriminated against Rovira on the basis of sexual orientation, in its employees' treatment of her when she as executor of Forlini's estate made application on behalf of the beneficiaries. New York City Administrative Code, Chap. 1, § 8.108.1 (1986) ("New York City Human Rights Law"). Count V claims a violation of the New York State Executive Law because in that same context it is alleged that AT & T employees discriminated against Rovira on the basis of marital status. N.Y.Exec.L. § 296(1)(a) ("New York State Human Rights Law"). Count VI claims breach of contract based on AT & T's contractual promise to apply AT & T's overall equal opportunity policy when providing Sickness Death Benefits to all eligible employees, without discrimination as to marital status or sexual orientation. AT & T claims that Counts IV, V and VI arise from the administration and denial of employee benefits and so are preempted by ERISA, and that plaintiffs lack standing under the above statutes and under the common law for breach of contract. At the outset, the Court notes that Counts IV, V and VI are asserted only on behalf of plaintiff Rovira and so it is as to her alone that the questions of standing and preemption

are at issue here. Complaint, ¶¶ 77–79, ¶¶ 81–83, ¶¶ 86–87.

## I. ERISA Preemption

Plaintiffs assert their claims under Counts IV, V and VI are distinguished from their ERISA claims in accordance with the holding in *Aetna Life Insurance Co. v. Borges,* 869 F.2d 142 (2nd Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). *Aetna v. Borges* involved a claim of preemption of Connecticut's escheat laws by ERISA, in a proceeding by the state to take control over uncollected drafts for ERISA benefits held by Aetna. The Second Circuit held that while ERISA's preemption provision is deliberately very broad, it was not meant to preempt every state law having any impact on employee benefit plans and will not be held to preempt statutes whose effect on pension plans is "tangential and remote." 869 F.2d at 145. The Second Circuit held, in general, that laws that have been ruled preempted by ERISA are those that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." 869 F.2d at 146. While anti-discrimination statutes are "laws of general application" and constitute "traditional exercises of state power or regulatory authority," *id.,* their effect on ERISA plans is not incidental if they are asserted to determine whether benefits are paid or who is a beneficiary. 869 F.2d at 147, 147 n. 4. *See also, Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Plaintiffs acknowledge that their claims under Counts IV, V and VI for benefits under an ERISA plan would be preempted by ERISA and state those counts are claims for emotional distress caused by the hostile and degrading treatment of Rovira by AT & T employees due to her sexual orientation or marital status. Accordingly, the remainder of the opinion will address those claims as so delineated.

AT & T argues that ERISA preempts Rovira's claims for emotional distress be-

cause the acts giving rise to the claims occurred during the processing or administration of benefits. Such a wide-ranging interpretation of the ERISA preemption is not totally persuasive.[2] While the Fourth Circuit has held that "state laws, insofar as they are invoked by beneficiaries claiming relief for injuries arising out of the administration of employee benefit plans, 'relate to' such plans and, absent an applicable exemption, are preempted by ERISA," *Powell v. Chesapeake and Potomac Telephone Co.*, 780 F.2d 419, 421 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986),[3] finding a preemption in the present case would constitute a broader ruling. The plaintiff in *Powell* claimed intentional infliction of emotional distress in the mishandling of an ongoing, established beneficiary relationship with her employer's benefits department, in connection with her disability and claims thereunder. In *Pilot Life Insurance v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that state common law causes of action by an employee asserting improper processing of a claim for benefits under an employee benefit plan were preempted by ERISA. Similarly, in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that a former employee's state law breach of contract and tort claims for intentional infliction of mental anguish and for wrongful termination of disability benefits were preempted by ERISA and thus removable to federal court.

Here, plaintiff claims she was treated impermissibly before she had any established beneficiary relationship with AT & T or its benefits department. AT & T is alleged to have ignored Forlini's survivors and refused to give Rovira the attention, help or information she needed even to request such a relationship, contrary to its usual practice when an employee dies.

This conduct may not constitute administration of an employee benefit plan such that it is covered by ERISA. The Supreme Court noted in *Shaw, supra,* with specific reference to the New York State Human Rights Law, that "§ 514(a) pre-empts state laws only insofar as they relate to plans covered by ERISA. The Human Rights Law, for example, would be unaffected insofar as it prohibits employment discrimination in hiring, promotion, salary, and the like." 463 U.S. at 99, n. 17, 103 S.Ct. at 2900, n. 17. The Ninth Circuit held in *Lane v. Goren*, 743 F.2d 1337 (9th Cir.1984), that a state anti-discrimination charge was not preempted by ERISA when the defendant was sued in its role as an employer and not in its role as an ERISA trustee. 743 F.2d at 1340. In the present case, the claims for emotional distress are alleged against AT & T and its benefits department not in its role as an ERISA administrator but as an employer dealing with an employee's survivor or as a corporation interacting with the public. Accordingly, these claims, as limited by plaintiff's own characterization, may not be preempted by ERISA. Therefore, without determining the ERISA preemption issue, the Court will examine whether it would be appropriate to exercise pendent jurisdiction over Counts IV, V and VI.

## II. Pendent Jurisdiction

### 1. The New York State Human Rights Law (Count V)

Count V alleges violation of section 296(1)(a) of the New York Executive Law, which provides:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to

---

**2.** The complaint also alleges that causes for distress included a notable failure of AT & T employees to visit Forlini's survivors or to offer any condolences or initial information on benefits, contrary to its usual practice when an employee dies, and the employees' refusal to allow Rovira to speak to a supervisor.

**3.** In *Powell,* the plaintiff appealed a grant of summary judgment by the lower court and its dismissal of her claims on the ground that they were preempted by ERISA. 780 F.2d at 420.

hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y.Exec.L. 296(1)(a). § 297(9) provides in relevant part:

9. Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate ...

N.Y.Exec.L. § 297(9).

For standing to bring Count V, Rovira herself must arguably have a right under N.Y.Exec.L. § 296(1)(a) to sue for the distress caused her by alleged discrimination at the hands of AT & T.

Rovira is not an employee of AT & T, but the state statute is not expressly limited to employees; it states that "any person aggrieved" has a cause of action, specifically including several examples of non-employees in the definition of "person." N.Y. Exec.L. § 292, subd. 1. Under the statute, "[t]he term 'person' includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." N.Y.Exec.L. § 292, subd. 1. Since Forlini is dead and Rovira alleges she is the executor of Forlini's estate, in that capacity Rovira might have standing under the statute to assert any claims of Forlini. Forlini, however, did not suffer the emotional distress claimed herein.[4]

In order to show standing, Rovira must show that the discriminatory conduct against her arguably violates a right she has under the statute. Plaintiffs cite neither authority nor legislative history for

the proposition that discriminatory conduct or conversation aimed at an employee's spouse, relative or "significant other," after employment has ended because of the employee's death or another occurrence, constitutes discrimination in employment under the statute. From plaintiff's own characterization of her claims, this Court does not see that her injury, albeit deplorable, falls within the zone of interests to be protected by the state statute or that the conduct complained of constitutes "unlawful discrimination" compensable under the statute.[5] If the only injury alleged is the degrading treatment by AT & T employees of another employee's survivors, plaintiff has cited nothing to show that the statute currently provides a remedy for such conduct, however reprehensible. Absent any state precedent or legislative history to support the interpretation urged by plaintiffs, the Court will not so extend the reach of a state statute, but neither will it rule out such an interpretation, those being tasks better suited to a New York state court.

### 2. The New York City Human Rights Law Claim (Count IV)

Count IV alleges violation of section 8–108.1 of the New York City Administrative Code, which provides in part:

1. The provisions heretofore set forth in section 8–107 as unlawful discriminatory practices shall be construed to include discrimination against individuals because of their actual or perceived sexual orientation.

N.Y.C.Admin.Code § 8–108.1

Section 8–107 of the Administrative Code provides:

---

4. AT & T cites *Belanoff v. Grayson*, 98 A.D.2d 353, 471 N.Y.S.2d 91, 94 (1st Dep't 1984), for the proposition that the legal spouse of an alleged victim of employment discrimination lacks standing to bring suit under the statute. *Belanoff* involved claims brought by a living employee and her spouse; the court dismissed the spouse's derivative claim of loss of consortium, not for independent acts directed at the spouse. 471 N.Y.S.2d at 94.

5. The statute prohibits discrimination against any "individual" but gives a cause of action to a "person aggrieved." It defines "person" in several capacities, one of which is "one or more individuals." N.Y.Exec.L. § 292, subd. 1. Thus, even though a person, representative or organization other than the "individual" may have a cause of action, the unlawful discrimination proscribed by § 297 may be limited to acts aimed at the "individual" and not at the "person" who may bring the cause of action.

1. It shall be an unlawful discriminatory practice:

(a) For an employer, because of the age, race, creed, color, national origin or sex of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

*Id,* § 8–107(1)(a). AT & T argues that the city statute does not authorize a private cause of action, citing *Koster v. Chase Manhattan Bank,* 609 F.Supp. 1191, 1197 (S.D.N.Y.1985). Plaintiffs contend that in *Koster* the federal court misread the city statute, but they cite no authority on point to support that claim or to show clearly that the city statute does provide a private cause of action.[6]

### 3. The Breach of Contract Claim (Count VI)

Count VI claims that Rovira is a third party beneficiary of the employment contract between AT & T and Forlini and that part of the contract was a promise not to discriminate on the basis of marital status or sexual orientation, under the AT & T equal opportunity policy. The conduct alleged to have violated that promise is not the denial of benefits itself but the treatment given by the benefits department employees to Rovira when she made inquiries. In essence, plaintiffs argue that due to the equal opportunity policy, an employee has an agreement with AT & T for non-discriminatory treatment of her family or "significant others." Nothing cited by plaintiffs in their pleadings as constituting AT & T's equal opportunity policy indicates that the policy is intended to apply to any person other than the employee herself. *See, e.g.,* Complaint, ¶ 22. No state law precedent clearly supports such a claim.

Because Counts IV, V and VI, as restricted by plaintiffs, may not be preempted by ERISA, and because retaining those counts would put this Court in the position of interpreting an uncharted area of state and local law as well as state common law, the Court declines to exercise pendent jurisdiction over Counts IV, V and VI. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### CONCLUSION

Accordingly, Counts IV, V and VI are dismissed without prejudice to their being brought in state court. Counsel are directed to appear for a conference on April 16, 1991, at 9 a.m., in Courtroom 302 at the United States Courthouse, Foley Square, New York, New York.

IT IS SO ORDERED.

---

6. The cases cited by plaintiffs are ambiguous; while they mention the city statute, they do not clearly show that there is a private cause of action thereunder. *See, e.g., Hudson View Properties v. Weiss,* 59 N.Y.2d 733, 463 N.Y.S.2d 428, 450 N.E.2d 234 (1983); *Leonedas Realty Corp. v. Brodowsky,* 115 Misc.2d 88, 454 N.Y.S.2d 183 (N.Y.Civ.Ct.1982).